The plaintiff was run over by what is termed in the case an ash car, on one of the tracks of defendant's road, near the Grand Central Depot in New York, on the 30th of October, 1880, and the accident resulted in the loss of both his legs. He brought an action against defendant to recover the damages which he thus sustained, and upon the trial he was nonsuited and the nonsuit upon appeal was sustained by the General Term and from the judgment of affirmance the plaintiff has appealed to this court.
Upon the trial the plaintiff gave evidence tending to prove the following facts: He was a brakeman in the employment of the defendant, and was assigned to duty in and about the Grand Central Depot, and the yards and grounds adjoining. Of the several tracks running north from that depot at the place of the accident it is only necessary to notice two, which are called the "shore line" and the "express" tracks, the shore line being the westerly and the express being the next adjoining track on the east.
Just before the happening of the accident, which occurred at about seven o'clock in the evening, the plaintiff was on an engine which stood on the shore line a little above (north of) the Forty-seventh street bridge and in the yard of defendant. He was talking to the engineer and to one of his own fellow workmen, when the foreman of his gang came up and asked the engineer if he was coupled on to a car which stood in the rear of his engine. One of the men on the engine replied "yes," when he was told to pull the pin and come in on the express track, and (as the witness understood him) get the air car. The foreman was subsequently sworn and says that he said to get the ash car. The difference is not important only as showing that the order as to what car to get was not understood, and that the ash car was not then looked for. When the order was given, plaintiff and his fellow workman got off the engine, the plaintiff pulled the pin out behind and the engine started north to go on a switch which was 184 feet north of the Forty-seventh street bridge, for the purpose of backing down on the express track to get the car spoken of. *Page 570 
The plaintiff and his companion Buckley, who was a car coupler, then started south between the shore line and the express tracks for the purpose of finding the car spoken of by the foreman; the engine having been switched from the shore line to the express track, backed down on the latter track while the men were going south. They passed under the Forty-seventh street bridge, and when just south of the bridge they came to a car on the express track, the north end of which car stood about four feet south of the north end of the bridge. The plaintiff was slightly in advance of his companion and when they came upon the car they supposed it was the one that was to be moved. Buckley prepared to make the coupling. He removed the pin from the bumper on the north end of the car and got ready to make the coupling, while the plaintiff went to the south end and prepared to get up on it for the purpose of attending to the brakes when the car was coupled to the engine. The car was loaded with ashes from a heap of ashes that had been collected by the side of the car. As Buckley prepared to attend to the coupling he saw the engine coming back so rapidly that he could not make it and had to jump out of the way to save himself. He had left his own lamp on the rear of the tank of the engine for the purpose, as he said, of lighting the rear of the engine, so he could see to make the coupling as the engine moved down to the car. The plaintiff, in the meantime, had set his lamp down at the rear of the car for the purpose of getting on it, and as it had no step he was obliged to take hold of the brake rod and put his foot on one of the bumpers, and in this way was obliged to use both his hands. He was in the act of swinging himself upon the car when it was struck by the engine, and the force of the collision knocked him off. He had hold of the brake rod with both hands, and the force of the blow unloosed his hold, knocking him off the bumper and across the track. He called to the engineer to attract his attention, expecting that he might hit the car again. When he fell across the track the brake beam, which is a beam connecting the shoes on either side of the car, *Page 571 
came against him and shoved him along, the plaintiff rolling in front of it for some distance. Finally his shoulder got under the brake beam and shoved it up somewhat and then the car passed over him, the wheels crushing both legs.
The plaintiff was knocked off the car when the rear end was between thirty and forty feet south of the Forty-seventh street bridge, and, as might be inferred from the evidence, the car did not pass over him until he reached what is termed the hydrant between Forty-sixth and Forty-seventh streets, about forty feet north of Forty-sixth street, the car proceeding south as far as Forty-sixth street after it had run over the plaintiff. The plaintiff was picked up and taken to the hospital where both legs were amputated, and he remained in the hospital for several months thereafter. This ash car was a car which was used for the purpose of carrying away the ashes from the depot and the yard adjoining to a place several miles north on the Harlem where the ashes were dumped. It had been loaded that afternoon and had been left at the spot where the collision took place.
The brakes on this car were out of order. In the language of one of the witnesses the difficulty was that the connection rod connecting the shoes of the brake with the brake staff came up against the brake staff and would not hold the car. The connection rod was too long. It is the rod to which the brake chain is attached at one end connecting the staff to the rod, and the brake chain wound around the staff and drew the rod up to the staff before the shoes were brought up against the wheels, and then, of course no further turn could be made; and in this way the brake was, as the witness says, practically useless. There was evidence in the case from which a jury might be asked to infer that the defendant had notice of the defective character of the brake some time before the happening of the accident, and that it had attempted once to repair it, but had failed to make it work properly. There was evidence tending to show that the engine in backing toward the car went at the rate of from eight to ten miles an hour. The car was not seen by the engineer, and he was not expecting it *Page 572 
at that particular point. Nor did the plaintiff or his companion, when they went down to look after the car spoken of by their foreman, know where the car was, nor did they expect to find this ash car. There was evidence that it was customary to set the brakes when cars were left on the tracks, and, as might be inferred, for the purpose of keeping them steady, and to prevent their being moved far, if struck while making up trains, or in moving engines or cars about the yard, evidence being given that collisions from such a cause were of frequent occurrence. There was also evidence that if a car loaded as this one was with ashes, standing on a track in which there was a slight curve, was struck by an engine going at the rate of eight or ten miles an hour, if the brakes were in proper condition and set tight, that the car would not move from the effects of such a collision more than from five to ten feet, where, as in this case, with the car standing with unset brakes, consequent upon the brakes being out of order so that they could not be used, upon being struck by an engine, it ran from Forty-seventh street bridge south to the Forty-sixth street bridge, a distance of 250 feet, having, in the meantime, run over the plaintiff at a point about forty feet north of Forty-sixth street. Thus from the point where the plaintiff fell from the car on to the track to the point where he was finally run over and his legs crushed by the car, was a distance of nearly 200 feet.
Upon this evidence the defendant made a motion for a nonsuit, which at that stage of the trial was denied by the court. The defendant then gave evidence tending to show that the brake upon this car was in good condition; that it had been repaired but a short time previous to the accident and that at the time of the accident the chain attached to one end of the connecting rod, after it had been wound up so that the shoes were set against the wheels perfectly tight, had still several inches unwound. They also gave evidence tending to show that the co-employe of the plaintiff, Buckley, was guilty of negligence in leaving his lamp on the rear of the tank of the engine, at the time he started south for the purpose of getting *Page 573 
the car spoken of by his foreman, and that the lamp, if it had been in the hands of Buckley, could have been used by him for the purpose that it was intended, that is, in giving signals to the engineer to stop, which he should have done as soon as he discovered the ash car, and that would have prevented the collision. It may be remarked here, that the witness Buckley swore that he left the lamp where he did in obedience to orders from a former foreman, in order, in a case like this, to see in making the coupling. Other evidence was given on the part of the defendant upon some other points in the case, which it is not necessary to mention in the view we take of the facts.
The motion for a nonsuit was renewed at the end of the defendant's evidence and was granted by the court. In this we think the learned court erred. We think that, upon all the evidence in the case, it should have been submitted to the jury to determine as to what was the condition of the brake on the night in question, and if out of order, whether the defendant was guilty of any negligence in that respect which caused the injury, and also upon the question of any contributory negligence on the part of the plaintiff. In order to sustain the nonsuit the learned counsel for the defendant claims that the collision of the engine with the ash car was the proximate cause of the plaintiff's injury, and that no negligence of the defendant in any degree tended to bring about such collision, but that, on the contrary, the collision was the result of the negligent act of the plaintiff and his co-employes.
We do not think that it can be said that the collision of the engine with the ash car was the proximate cause of the plaintiff's injury. Assuming that he was knocked off the car through the negligence of the engineer, or of the co-employe of the plaintiff, Buckley, by which the collision was caused, yet, under the facts in this case, we think it can be said that the result of the collision was to place the plaintiff in a dangerous position, from which position he might have extricated himself without injury, if the brakes on the ash car had been in proper condition. He was not injured by being thrown from *Page 574 
the ash car, on the contrary, if the ash car had moved but a few feet after he fell upon the track he would have sustained no injury whatever, if his evidence is to be believed. It was not until this ash car had moved a distance of some 200 feet that the brake beam was finally raised sufficiently high to pass over the shoulder of the plaintiff so as to allow his legs to come in contact with the wheels.
A jury might be asked upon this evidence to say that but for the fact of the brakes being out of order and failing to hold the car at all, the plaintiff would have sustained no injury from the collision. In this way we think it can be said, with truth, that the proximate, direct cause of injury was the condition of the brakes on the ash car, and that the only effect of the collision was to place the plaintiff in a dangerous position from which he might have been extricated without injury provided the brakes had been in proper order.
The duty of an employer to provide safe and proper machinery for his employes, and the extent of that duty, are too well settled in this court to need the citation of authorities on that subject. The difficult point in this case, and the one in regard to which we have had considerable doubt, is whether, assuming there was a failure of the company to have proper brakes upon this ash car, that failure really bore such a relation to the happening of the accident as to render the company liable. Can it be said that this accident (or one of such a nature) might fairly and reasonably be apprehended as a possible result of a failure on the part of the company to perform its duty as to the brakes, or was it of such a character that its occurrence would never have reasonably been anticipated, and that it therefore bore no fair and just connection with the bad condition of the brakes? After considerable reflection, and with some hesitation, we have come to the conclusion that we cannot say there was no such relation. It is a border case and much might be said on the other side. It is, perhaps, true that an injury such as the plaintiff sustained never before happened in such a manner. That is not, as we think, conclusive upon the question of defendant's exemption. *Page 575 
The purpose of brakes upon a car is to control it to a much greater extent than could be done without them. They are used, not alone when the car is in motion, and to retard its progress; the evidence in this case shows they are constantly used when a car is at rest, and for the purpose of rendering it less easy and less liable to be moved. There is thought, and properly thought, to be danger as well as inconvenience resulting from permitting a car to stand upon the tracks at any time with brakes unset. It is not necessary, in order to hold a defendant liable, so far as this point is concerned, to be able to see in advance all the possibilities of danger which might result from such omission. Accidents are continually happening, the exact counterpart of which may not to our knowledge have occurred before.
That is not the test. If the accident is of such a nature that its occurrence might reasonably be apprehended from the failure to take the precaution in question, and if it did thus happen, then a relationship is established between such failure and the cause. Now, the direct and immediate cause of this accident was the car running over the plaintiff. Granted that the plaintiff would not have been run over if he had not first been knocked off the car by the collision with the engine. That only proves that by the neglect of a co-employe he was placed in a dangerous position, and being thus placed he is injured because the car was not supplied with a brake in a good condition, He is injured by being run over by the car which was moving at a time when, if it had had a brake in good condition and properly set, it would have been stationary. One of the dangers to be apprehended from a car in motion at a time when it ought to be stationary is that it may injure people by running over them. It is so obvious that there is danger of some kind to be apprehended from leaving a single car without the brakes being set, even when the car is in the yard, that the defendant proved in this case it was the duty of all employes to set the brakes of such a car, and that if the brakes were out of order it was the duty of the employes to "chock" the wheels of the car thus left; and the defendant *Page 576 
claimed that the failure to thus "chock" the wheels of this car (if the brakes were really in the condition as charged by the plaintiff, which it denied), was the negligence of a co-employe contributing to the injury for which it was not responsible.
The duty of a brakeman calls him to situations of peril in and about standing as well as moving cars, and this peril is of a nature that is recognized as existing by the railroad authorities, and they have assumed to reduce it as far as they reasonably can by the appliance, among other things, of brakes, not alone on that account, but that is one of the objects. The failure to have the brakes in order may, under these circumstances, be fairly alleged as the cause of the accident.
It is stated also by the counsel for defendant that even if the brakes had been in perfect order, they might not have been set, and if they had not been set this accident would have occurred; and that a failure to set them would have been the failure of a co-employe of the plaintiff for which the defendant would not be responsible. As already stated, the evidence in the case is that it is usual and customary, and the duty of defendant's employes, to set brakes upon a car situated as this one was. If it be usual and customary, I think it may be reasonably presumed that the employes of the defendant would do their duty and set the brakes. Certainly no presumption of a non-performance of their duty ought to be indulged in for the purpose of absolving the defendant from liability arising from the brakes being out of order.
It is true that it cannot be said with absolute certainty that if the brakes had been in good condition and properly set, and the collision had occurred, that no injury to plaintiff would have followed. But that conclusion certainly may be reached with reasonable probability from the facts testified to on the part of the plaintiff. In this way (if his evidence be true), we think it may be said that the failure to have the brakes in good condition does bear such a relation to the happening of the accident as to make it a question of fact for the jury to determine upon all the evidence in the case whether this *Page 577 
injury would have occurred if the brakes had been in good order and properly set. Even if it could not with absolute certainty be said that it would not have happened but for the omission of the defendant to have the brakes in proper order, yet assuming the evidence on the part of the plaintiff to be true, it would seem as if there were sufficient to go to the jury upon that question. Absolute certainty is not attainable in this class of cases, and is not requisite, in our judgment, before submitting the inferences to be deduced from the facts to the jury.
We think there was no contributory negligence, as matter of law, on the part of the plaintiff, and that the case should have been submitted to the jury. Other questions were discussed, but they may not arise upon a new trial. For the reasons already suggested, we think this judgment should be reversed and a new trial granted, costs to abide event.
All concur, except EARL and FINCH, JJ., who dissent on the ground that the defect in the brake was not the proximate cause of the accident, that the defendant was not bound to anticipate such an accident from a defective brake, that there was no culpable neglect chargeable to defendant and that the accident was caused by the negligence of co-servants.
Judgment reversed.