There is very little to be said about this case. If it be assumed that by grading the streets and constructing the sewers the city did not change the natural direction for the flow of surface water from the area of the sewer district, it would not relieve the defendant from liability. In the natural state of the land, the surface water would flow dispersed over a large area on to the lower land beneath. The sewers, however, collected all this surface water into a single stream or body, and then it was cast upon the plaintiffs' land. This act was beyond its right, and was a trespass. In Barkley v. Wilcox, 86 N. Y. 140, it was held that the owner of the higher land cannot collect the surface water falling on the land into channels, and discharge it upon the land beneath. It was stated, "This is alike the rule of the civil and the common law." It is exactly this which has been done in this case by the defendant. Moreover, the defendant has not only cast upon the plaintiffs' land the surface water, but the sewage of the district. There cannot be even plausible contention in justification of this act. In this respect the case is entirely analogous to that of Noonan v. City of Albany, 79 N. Y. 470. The judgment can also be well supported on the ground upon which it was placed by the court below,—that of negligence. The defendant insists that previous to the time of the occurrence the subject of this suit—the sewer and drain—had proved adequate to carry away the surface water and sewage. If this be so, the fact that on this occasion the sewer overflowed the plaintiffs' land would tend to show that at that time it had become in some way defective or obstructed. We think the rule res ipsa loquitur applies. The defendant was called upon to explain what was the trouble or difficulty with the sewer on this particular occasion, and that it was not responsible for that difficulty. It wholly failed to give any sufficient explanation upon the subject. The award of damages seems large when we consider the small tract under cultivation (some six acres), but it appears to be entirely justified by the evidence. The plaintiffs were not restricted to proving the value of their crops on five acres because the complaint stated that area as the contents of their land. The variance between the contents as stated in the complaint and the actual contents as shown by the evidence was immaterial. A bill of particulars accompanied the complaint, and apprised the defendant in detail of every item of damage which the plaintiffs sought to recover. The defendant was, therefore, in no wise prejudiced or misled by the variance as to the quantity of land occupied by the plaintiffs.

The interlocutory and final judgments appealed from should be affirmed, with costs. All concur.

---

(17 App. Div. 588.)

## HANRAHAN v. BROOKLYN EL. R. CO.

(Supreme Court, Appellate Division, Second Department. May 11, 1897.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.
    A car inspector went between an engine and a car, which stood within a few feet of each other, for the purpose of inspecting the car. He did not notify any one of his presence there, as was customary. While so engaged, a car, shunted down from another track in the process of making up a train, could not be stopped by the brakeman in charge of it, and drove the

car which was being inspected against the engine, and killed the inspector. He knew the method of making up trains at that point, and that in such weather as prevailed at the time cars sometimes could not be controlled with the brakes. *Held*, that the inspector either assumed the risk of the situation or was guilty of contributory negligence.

2. SAME—DEFECTIVE APPLIANCES—INSPECTION.

Negligence in furnishing improper appliances is not shown by the fact that an employé was injured because the brake on a car did not act effectually, where the car had been properly inspected before it left the yard, and the brake was then in proper condition.

3. SAME—DEFECTS CAUSED BY WEATHER.

A railroad company is not liable for injuries to an employé caused by the ineffectual action of a brake, resulting from an accumulation of snow between the wheel and the shoe of the brake while the car was in use.

Appeal from trial term, Kings county.

Action by Julia Hanrahan, as administratrix of Jeremiah Hanrahan, deceased, against the Brooklyn Elevated Railroad Company, to recover damages for the death of plaintiff's intestate. From a judgment entered on the verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

R. Percy Chittenden, for appellant.
Luke D. Stapleton, for respondent.

GOODRICH, P. J. On March 2, 1896, the plaintiff's intestate, Jeremiah Hanrahan, was killed at the Van Sicklen avenue station of defendant's elevated railroad. He had been car inspector for eight years. It was the custom of the company to make up its trains at Van Sicklen avenue, where at the time of the accident a train consisting of an engine and three cars had just come in. The engine had been uncoupled from the cars, leaving a space of two or three feet between the engine and the rest of the train. Hanrahan entered this open space to inspect something on the front of the first car, and it does not appear that he took any precautions against danger. While standing there, two other cars from what is known as the "D. O. Yard," on Broadway, several blocks distant, were shunted out of that yard by an engine to be "kicked" down; that is, to be run out to the rest of the train, their movement being assisted by a down grade. A brakeman was standing on the platform of the forward end of 212, which was the first of the two cars, and as he approached the standing train he attempted to check the movement of the two cars with the brake; but, for some unexplained reason (either because the chain on the brake failed to wind around the staff of the brake properly, or that ice and snow had gathered between the wheels and the shoes of the brake), he was unable to wind up the brake sufficiently to bring the shoes into immediate contact with the wheels, in consequence of which the momentum of the two cars could not be stopped, and they struck the rear of the standing train with such velocity that the three cars were driven ahead, closing the space between them and the engine so quickly that Hanrahan was crushed between the engine and the car, and received injuries from which he died. At the close of

the plaintiff's evidence, the defendant moved for a dismissal of the complaint, which motion was renewed at the close of the whole evidence, on the grounds that the evidence showed that the deceased was guilty of contributory negligence, that the accident was occasioned by a risk of his employment, and that there was no evidence of negligence of the defendant. The motion was denied, under the defendant's exception. The jury found a verdict for $5,000, and from the judgment entered thereon this appeal is taken.

The defendant contends that the deceased was guilty of contributory negligence in failing to use proper care for his own safety; that there was no sufficient proof of defendant's negligence in failing to supply a proper brake; that it had no notice that the brake was defective, and that, if the chain was defective, it was the duty of one Herbert, a fellow servant of the deceased, to discover and report it before it left the D. O. yard, and for his failure to do so the defendant is not liable; and that unless the defect was discernible by reasonable inspection, or if it arose while the car was going from the D. O. yard to the standing train, it was one of the ordinary risks of Hanrahan's employment, for which the defendant is not liable. Upon the question of Hanrahan's contributory negligence, it appears that he was a car inspector at Van Sicklen avenue. Westerfield, called as a witness for the plaintiff, testified:

"I had seen Hanrahan around there that morning before this accident happened, and on many occasions before I had seen him both on the structure and on the track, inspecting, and his inspection was of the trucks underneath the cars; all parts of the car; the drawbars and all that sort of thing. I couldn't say how long those two cars that I was riding had been at Van Sicklen avenue. Hanrahan got there first in the morning. It was his duty to inspect the cars at that station before they were sent out, and when they came in."

There is a distinction to be observed as to the location of Hanrahan's duty, both as to time and place. I think that the fair construction of the evidence is that it was his duty to inspect the cars at and only after their arrival at the Van Sicklen avenue station, and not in the D. O. yard, so that if the alleged defect in the brake occurred before the car left the D. O. yard, or before it arrived at the Van Sicklen avenue station, it cannot fairly be said that his duty of inspection gave him opportunity to know that the brake was out of order; and I assume this to be the fact in my discussion of the situation. But he knew that the method of making up the train already mentioned was the usual one, and also that it was a snowy and freezing morning, and that if on such a morning the operation of the brake was liable to be disordered by reason of the snow or other cause, so that there was danger that the brakes would not work, or that the momentum of the cars could not be checked, he took upon himself the risk predicated upon this knowledge, when he entered the space between the engine and the cars without notifying any one of his intention to do so. Kelly, the engineer, called by the plaintiff as a witness, testified that, when it was necessary for Hanrahan to go between the cars, it was the custom to notify somebody of the fact, because in coupling cars there was always some movement; and no such notice was given by Hanrahan on this occasion. He was bound to know that there was danger of a collision between the two parts

of the train which might suddenly and violently close the space between the engine and the forward car, so that either he took the risk of the situation, or he was guilty of contributory negligence in entering the open space without proper precaution, notice, or observation; and this prevents a recovery.

I am also of the opinion that the plaintiff has not shown negligence on the part of the defendant in furnishing improper appliances, sufficient to establish its liability. Car 212 was a Gilbert car,—one of many similar ones used by the defendant; and it had been in use for a long time with this particular brake and chain, and was not different in its description from the other cars which were used by the company. Besides, Herbert, car inspector at the D. O. yard, testified that he was on duty from the evening before until 7 o'clock of the morning of the accident, which occurred at about 6 o'clock; that his duty was to look over brakes, wheels, shoes, and all running gear in the yard, and that he inspected all such cars that morning; that he used a lamp in making the inspection, and inspected the brakes, the running gear, the chains, the shoes, and everything, to see if the cars were in good shape to go out; that they were in good condition; and that no chains on the brakes of any one car were longer than those on the others. There was also undisputed evidence that the foreman car inspector, O'Gara, and another car inspector, McDonald, within a few hours after the accident,—no change being shown meanwhile,—examined car 212 as to the brakes, chains, and running gear, and made a practical test of the brake, and found that upon winding it up in the usual manner the shoe was properly brought against the wheel. Webster, the foreman and master car builder of the Manhattan Elevated Railroad in New York, also examined car 212, although the time of his examination does not appear, and found the brake staff, chain, and brake in good order, such as is usual on a car of this character. If this evidence is true,—and it was not contradicted,—the defendant discharged its duty of furnishing proper appliances and of careful inspection, and the failure of the brake might have resulted from something which occurred after the cars left the D. O. yard, and of this the defendant had no notice. This testimony becomes all the more important in view of the testimony of the plaintiff that the failure of the chain to work was caused by its improper length, which gave so much slack that it could not be taken up by the revolution of the brake staff. It would also seem to be true, as a physical fact, that, if the chain had been too long, it could not have wound upwards, but would have wound downwards and below, by reason of its own weight. It is not proven whether the accident was caused in the manner claimed by the plaintiff, or by the accumulation of snow, or from some other cause. It is a well-established principle that where the damage claimed was occasioned by one of two causes, for one of which a defendant is responsible, and for the other of which he is not responsible, the plaintiff must fail, if his evidence does not show that the damage was produced by the former cause, and that, if it is just as probable that it was caused by the one as by the other, he must also fail, as he is bound to establish his claim by a preponderance of evidence. Searles v. Railway Co., 101 N. Y. 661, 5 N. E. 66; Dobbins v. Brown, 119 N. Y. 188,

23 N. E. 537. If the inability to check the cars was caused solely by ice or snow which accumulated after the two cars left the D. O. yard, and before their arrival at the Van Sicklen avenue station, the defendant is not liable therefor. Undoubtedly it is the duty of the master to keep an appliance in good order, and he cannot delegate that duty so as to escape that responsibility; but this is the general rule, and has its qualifications and limitations. One of these is that it is not the master's duty to repair defects arising in the daily use of the appliances for which proper and suitable materials are supplied, and which may be easily remedied by the workman, not requiring the help of skilled mechanics. Cregan v. Marston, 126 N. Y. 572, 27 N. E. 952. Illustrations of this position will be found in McGee v. Cordage Co., 139 Mass. 445, 1 N. E. 745; Johnson v. Towboat Co., 135 Mass. 209. The plaintiff is also met by the fact that it does not appear that there was any negligence of examination or defect in the brake before it left the yard. The brake had always worked properly before this time, and the master, who had no notice of any defect, cannot be held liable for any sudden failure of the brake to do its duty between the time when the car left the D. O. yard and that of the accident.

The learned counsel of the plaintiff cites several cases which are easily distinguishable from the case at bar. Lilly v. Railroad Co., 107 N. Y. 566, 14 N. E. 503, was a case where a brake was out of order, and the defendant had notice of the fact, and had attempted to repair it, before the accident, but had failed to make it work properly. Doing v. Railroad Co., 151 N. Y. 579, 45 N. E. 1028, was a case where cars were improperly and suddenly shunted into a repair shop, where the employé had no view of the exterior tracks, and no opportunity to see whether or not cars were coming in. In Bushby v. Railroad Co., 107 N. Y. 374, 14 N. E. 407, it appeared that a stake on a lumber car, used to hold lumber in its place, broke in going around a curve, and that it was decayed, spongy, and unsound, and that this defect was apparent upon inspection; and the court held the defendant liable for failure to supply proper stakes. Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24, was a case where a workman was injured by the fall of a mass of rock. It appeared that there had been a large and increasing crack in the rock, and that the attention of the superintendent had been called to it before the accident, and that he had been warned of its dangerous character, but took no precautions to support it. Bailey v. Railroad Co., 139 N. Y. 302, 34 N. E. 918, was a case where damage was occasioned to a brakeman on a train. While he was trying to wind up the brake, it broke, by reason of the absence of a pin in the bottom of the brake, designed to hold the rod in place. The court said:

"The duty of a railroad company to use reasonable care to protect its employés from injury while engaged upon its trains embraces the obligation to use reasonable care in furnishing suitable machinery in the first instance, and to keep it in repair, so that their lives may not be exposed to unnecessary peril. The duty of proper inspection for the purpose of discovering defects which may arise from use is a part of the duty owing by the company to its servants. Where an employé is injured from defective machinery, the fact that he was so injured does not, alone, raise a presumption of negligence on the part of the company. 'The knowledge of the defect must be brought home to the master, or proof given that he was ignorant of the same through his own negligence or want of proper care.' Allen, J., Wright v. Railroad Co., 25 N. Y. 566."

In Painton v. Railway Co., 83 N. Y. 7, the accident was caused by a defect occasioned by improper welding of an eye bolt, and the court held that the plaintiff did not make out this part of the case, on the ground that there was no notice of the defect brought home to the defendant, nor evidence that it could have been discovered by inspection. Fuller v. Jewett, 80 N. Y. 46, arose out of the explosion of a boiler; and the court said that there was ample evidence to show that the boiler had been in a dangerous condition for some time, that the engine had been sent to the shop for repairs, and that they had been improperly made, and that this evidence justified the verdict of the jury for the plaintiff. In Woods v. Railroad Co., 11 App. Div. 16, 42 N. Y. Supp. 140, in which Mr. Justice Cullen wrote the opinion, the accident was very similar to the one in question. There a car was being "kicked" down to join a lot of cars, and, the brake failing to work, an expressman in one of the cars was thrown down by the collision and injured. The court said:

"It was asserted that the [brake] rod was so adjusted on this car that, though the brake chain was wound up as far as possible, it would not press the shoes against the wheels. At the same time it was conceded that the apparatus was in good condition, and that the alleged failure of the brakes to work, if there was such failure, proceeded from the fact that the rod was not properly adjusted. * * * The question, therefore, is narrowed to this inquiry: Did the failure to properly adjust the rod constitute the car a defective appliance? If so, it was a failure in the duty of the master, and, if the defect proceeded from neglect on the part of any of its servants, the defendant was liable. Or was it a neglect or failure in the detail of the work? If this, then the negligence, if any, was that of a fellow servant, and the defendant was not liable."

In the present action there is abundant evidence that there was no defect in the brake when it left the D. O. yard, and that the failure to work resulted from some accidental or unexplained cause. Until such explanation is made by the plaintiff, he is not entitled to a recovery. We have not deemed it necessary to express any opinion whether the negligence in inspection can be considered the negligence of a fellow servant, or as to any of the other questions raised by the defendant, as we find that it was reversible error to refuse a dismissal of the complaint on the grounds already stated.

The judgment and order should be reversed, and a new trial granted. All concur, except BRADLEY, J., who concurs solely on the ground of contributory negligence.