OLIVE K. BURROWS, as Administratrix, etc., of MARVIN A. BURROWS, Deceased, Respondent, *v.* LIVINGSTON-NIAGARA POWER COMPANY, Appellant.

Fourth Department, June 29, 1926.

**Gas and electricity — action for death of plaintiff's intestate caused by electric shock from 11,000 volt uninsulated wire — wire was constructed within four to eight feet from building in which intestate was employed. — question for jury whether position of wire constituted negligence..**

In an action to recover for the death of plaintiff's intestate who was killed by an electric shock from an 11,000 volt non-insulated wire, when he threw an iron pipe against the wire, it was a question of fact whether the position of the wire,, which was constructed and maintained within four to eight feet from the build-ing in which the intestate was employed, constituted negligence on the part of the defendant.

The court properly instructed the jury to determine whether the defendant should, in the exercise of reasonable care, have anticipated that persons engaged about the building in which plaintiff was employed might be endangered because of the location and condition of the power wire.

TAYLOR and CLARK, JJ., dissent, with opinion.

APPEAL by the defendant, Livingston-Niagara Power Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 1st day of October, 1925, upon the verdict of a jury for $18,000, and also from an order entered in said clerk's office on the same day, denying defendant's motion for a new trial made upon the minutes.

*Harris, Beach, Harris & Matson* [*Colin McLennan* of counsel], for the appellant.

*Werner, Harris & Buck* [*Arthur VD. Chamberlain* of counsel], for the respondent.

HUBBS, P. J. The defendant was engaged in furnishing electric power to the Ebsary Gypsum Company, by which the plaintiff's intestate was employed. He threw an iron pipe from a third-story window which came into contact with the defendant's uninsulated power line and he received a shock which caused his death. This action was brought to recover damages because of the defendant's negligence.

To my mind a mere statement of the fact that the defendant constructed and maintained a naked, high power line, carrying 11,000 volts of electricity, along the side of a factory, less than four feet from the building on one end and eight feet on the other, presents a question of fact as to its negligence. I think the decision of this case is controlled by the principle stated in the case of *Braun* v. *Buffalo General Electric Co.* (200 N. Y. 484), that is: " Whether the respondent [defendant] in the exercise of reasonable care and foresight, should have apprehended that the premises over which the wires were strung might be so used as to bring people in contact with them, and whether, therefore, it should have guarded against such a contingency." It was not necessary for the jury to find that the defendant should have apprehended that someone would throw an iron pipe twenty-five feet long from the third-story window and thus cause an injury. It is not essential that the defendant should have foreseen the particular consequences which might arise from the construction of the power line in the place and in the manner in which it was constructed. (*McKenzie* v. *Waddell Coal Co.*, 89 App. Div. 415, 416; *Lilly* v. *N. Y. C. & H. R. R. R. Co.*, 107 N. Y. 566, 575.)

The question is, should the defendant have anticipated, in the exercise of reasonable care, that the line as constructed constituted a menace and danger to people lawfully upon the premises? Is it so unreasonable to say that an employee of the factory might, in some way, cause something to come into contact with the live

wire and thereby cause an injury that the court can say as a matter of law that such construction was not negligent? In the *Braun* case Judge HISCOCK quoted from many cases illustrating the principle announced in that case. He also referred to the case of *Horning* v. *Hudson River Telephone Co.* (111 App. Div. 122; affd., 186 N. Y. 552). In that case a disused telephone wire dropped upon an uninsulated electric wire, thereby charging the telephone wire, with which the plaintiff came into contact and was injured. The contact of the two wires was caused by the burning of a building to which the telephone wire was attached and it was held that the electric light company might be held negligent for failing to anticipate that the building which held the telephone wire was liable to burn and cause the telephone wire to come into contact with its uninsulated, high power wire. That case extended the liability of a party maintaining a high power electric wire much further than the decision in the case at bar.

There is an exhaustive note to the case of *City of Henderson* v. *Ashby* (14 A. L. R. 1018; 179 Ky. 507) in which the cases where persons have been injured when employed near high power electric wires are collated. As I read the cases it is the tendency of the courts to hold companies which are distributing electricity over high power wires to a high degree of care.

I do not think that the case of *Adams* v. *Bullock* (227 N. Y. 208) holds anything favorable to the appellant's position. In that case the wire was a trolley wire which could not be insulated. Judge CARDOZO said: " There is, we may add, a distinction, not to be ignored, between electric light and trolley wires. The distinction is that the former may be insulated. Chance of harm, though remote, may betoken negligence, if needless. Facility of protection may impose a duty to protect. With trolley wires, the case is different. Insulation is impossible." Here, when the defendant placed this uninsulated wire, there was a chance of danger, though remote. By the construction adopted the defendant needlessly so placed its wire without insulation that because of that chance the plaintiff's intestate met his death. Judge CARDOZO also said in his opinion in that case: " Reasonable care in the use of a destructive agency imports a high degree of vigilance." I think it was for the jury to say whether the defendant was negligent, and that its verdict is sustained by the evidence.

The learned trial justice in his main charge properly submitted to the jury the question of negligence. He instructed it to determine whether the defendant should, in the exercise of reasonable care, have anticipated that persons engaged about the Gypsum Company's plant might be injured because of the location and con-

dition of the high power wire. The limitations which he afterwards placed upon the main charge were favorable to the defendant and do not constitute reversible error.

The judgment and order should be affirmed, with costs.

DAVIS and CROUCH, JJ., concur; CLARK and TAYLOR, JJ., dissent on the law and facts in a memorandum and vote for reversal and granting a new trial.

TAYLOR, J. (dissenting). Plaintiff's intestate, Marvin A. Burrows, was engaged in removing boards and refuse from a loft above the third floor of the " mill building " of the Ebsary Gypsum Company. He ran an iron rod over twenty-five feet long through a broken pane in an upper window in one end of this building, causing the rod to touch a heavily charged power wire which had been strung by defendant several feet from the wall of the building and over fifteen feet from the window in question. Decedent was instantly killed.

This charged wire was not strung near a dwelling or a business plant or any building in which the occupants were accustomed to or could use the windows in that end of the building in the usual course of affairs for any purpose. The wall along which the wires ran was practically a blank wall. All the windows in it were encased in steel and embedded in cement so that they could not be raised, lowered or opened in any manner. There was no room inside the building behind the two lower rows of windows for people to work, because that space was occupied by a large steel bin or vat; and the third floor was nothing more than a cover for this vat, with the loft or attic above it.

Negligence in the defendant was not necessarily dependent upon reasonable anticipation of all the possibilities or of the particular act resulting in Burrows' death. But such negligence must be predicated upon something which is the natural and probable result of some reasonable foreseeable use of the premises above or near which the wire was stretched. The unfortunate mishap was not " within the ken of reasonable prudence and foresight." (*Rowley* v. *Newburgh Light, Heat & Power Co.*, 151 App. Div. 65, 71.)

" Only some extraordinary casualty, not fairly within the area of ordinary prevision could make it [the wire] a thing of danger." (*Adams* v. *Bullock*; 227 N. Y. 208.)

" The cause of the mishap * * * was an unexpected and unusual one bringing the accident within that class which are termed unavoidable and unforeseen." (*O'Sullivan* v. *Knox*, 81 App. Div. 438; affd., 178 N. Y. 565.)

I dissent and vote for reversal on the law and facts, on the ground that there is no evidence upon which a finding of negligence in defendant can rest.

CLARK, J., concurs.

Judgment and order affirmed, with costs.