## SECOND DEPARTMENT, NOVEMBER, 1933.

FRED BONHAG, Appellant, v. QUEENS BOROUGH GAS AND ELECTRIC COMPANY, Respondent.

Judgment reversed on the law and a new trial granted, costs to appellant to abide the event. There were questions of fact to be submitted to the jury: 1. Was plaintiff rightfully upon the structure or " outdoor substation " where he was injured, in view of the work that he was required to do for a common owner upon the immediately adjoining premises? 2. If plaintiff was rightfully on the structure, was the dangerous character of the transmission lines connected with the structure known to him, or should it have been known to him in the exercise of reasonable care? If not, did defendant provide any adequate warning of the latent dangers in the reasonable and necessary work on the structure in the course of plaintiffs. work? (Burrows v. Livingston - Niagara Power Co., 217 App. Div. 206; affd., 244

N. Y. 548.)   Lazansky, P. J., Kapper, Carswell and Davis, JJ., concur; Hagarty, J., dissents and votes for affirmance, with opinion.

HAGARTY, J. (dissenting).   Defendant, engaged in the business of furnishing electricity to the public, maintains a plant in the city of Long Beach.   The plant comprises a power house, an outdoor substation and a boiler house.   We are concerned with the substation and the boiler house.   The substation, the front of which at least is inclosed by a mesh wire fence, consists of a skeleton steel structure carrying poles and wires for the transmission of electric current, and is immediately next to the boiler house.   The plaintiff is a carpenter, and at the time of the accident was employed by a firm of independent contractors, engaged in renovating the boiler house under contract made with the defendant.   On the day of the accident the plaintiff was shoring up the side of the boiler house directly opposite the substation.   Plaintiff's proof is that the shoring operation required the use of timber.   An upright was lowered from the roof of the boiler house by the plaintiff and a plank placed in position against it.   Plaintiff then left the roof of the boiler house, obtained a cleat and climbed upon the structure constituting the substation, with the intent of using it as a scaffold for the purpose of nailing the cleat to the upright.   He took a position on the structure some distance above the ground and directly under the transmission system, which was in full view.   While nailing on the cleat he came in contact with the live transmission wires and was caused to fall by reason of the shock of electricity.   Plaintiff was an experienced workman, most of his work in recent years having been done around power stations and gas houses. He started upon this work in October of 1930, and the accident happened on November eleventh of that year.   There is no proof that the defendant had any knowledge of plaintiff's presence upon the structure at the time of the accident or that the structure had ever been used by workmen in connection with the renovating of the boiler house, or for any other purpose.   Before the accident plaintiff had never been on the structure of the substation nor had any one ever asked him to do any work upon it.   He had been cautioned by his foreman to " watch out for the juice," but it had not been pointed out to him where the " juice " was.   If we credit him with common sense and consider that with his experience, we must charge him with knowledge that there was " juice " in the wires constituting the mechanism of the substation.   There is no claim that the structure was not legally maintained and operated by the defendant, nor is there any claim that any part of it was out of repair.   The question presented by this appeal is whether such an accident to the plaintiff was " within the ken of reasonable prudence and foresight " (*Rowley* v. *Newburgh Light, Heat & Power Co.*, 151 App. Div. 65), and, therefore, should have been guarded against by the defendant, failing in which it was liable.   I think not.   (*Flanagan* v. *Atlantic Asphalt Co.*, 37 App. Div. 476; *Seel* v. *City of New York*, 179 id. 659; *Aubrey* v. *McCarthy*, 217 id. 492.)   In *Burrows* v. *Livingston - Niagara Power Co.* (217 App. Div. 206; affd., 244 N. Y. 548), cited in the prevailing memorandum, the plaintiff's intestate was killed by an electric shock from an 11,000 volt non-insulated wire when he threw an iron pipe against the wire from the third-story window of a factory in which he worked and to which the defendant furnished power.   From the opinion by HUBBS, P. J., I quote: " To my mind a mere statement of the fact that the defendant constructed and maintained a naked, high power line, carrying 11,000 volts of electricity, along the side of a factory, less than four feet from the building on one end

and eight feet on the other, presents a question of fact as to its negligence. I think the decision of this case is controlled by the principle stated in the case of *Braun* v. *Buffalo General Electric Co.* (200 N. Y. 484), that is: ' Whether the respondent [defendant] in the exercise of reasonable care and foresight, should have apprehended that the premises over which the wires were strung might be so used as to bring people in contact with them, and whether, therefore, it should have guarded against such a contingency.' It was not necessary for the jury to find that the defendant should have apprehended that someone would throw an iron pipe twenty-five feet long from the third-story window and thus cause an injury. It is not essential that the defendant should have foreseen the particular consequences which might arise from the construction of the power line in the place and in the manner in which it was constructed. (*McKenzie* v. *Waddell Coal Co.*, 89 App. Div. 415, 416; *Lilly* v. *N. Y. C. & H. R. R. R. Co.*, 107 N. Y. 566, 575.) The question is, should the defendant have anticipated, in the exercise of reasonable care, that the line as constructed constituted a menace and danger to people lawfully upon the premises? Is it so unreasonable to say that an employee of the factory might, in some way, cause something to come into contact with the live wire and thereby cause an injury that the court can say as a matter of law that such construction was not negligent?'' The difference between that case and this, as I read it, is that there the injured man was where he belonged and the conductor was a non-insulated wire running alongside of the building in which plaintiff was working and four feet from it and concerning which he had no knowledge; while here the plaintiff, experienced in working about power stations, unknown to defendant and after a warning, placed himself in a position of danger by climbing upon defendant's structure to a point above the ground and under the transmission system, where he did not belong; further, there is no claim here that there was any defect in the defendant's structure or in the transmitting apparatus. I, therefore, vote to affirm the judgment.