## DEEGAN v. GUTTA PERCHA & RUBBER MFG. CO.

(Supreme Court, Appellate Division, Second Department.    March 5, 1909.)

1. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—DEFECTIVE MACHINES—
   EVIDENCE.

   Evidence in an action for injury to the operator of a mill for grinding rubber, his right hand being accidentally caught between the rollers, *held* to authorize a finding that, had the mill been equipped with a shifter, plaintiff could, after his hand was so caught, have reached it, and therewith have stopped the mill, and so have prevented further injury to that hand and injury to the other hand.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 961; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 129*)—INJURY TO SERVANT—PROXIMATE CAUSE.

   Absence of a shifter, due to the negligence of a master, from a mill for grinding rubber, with which, had there been one, the operator of the mill, after accidentally getting his right hand caught between the rollers, could have stopped it, and so have prevented further injury to such hand, and injury to his left hand, which got caught in his attempt with it to arrest the rollers and so release his right hand, is a proximate cause of such further injury.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 258; Dec. Dig. § 129.*]

3. DAMAGES (§ 132*)—PERSONAL INJURY—EXCESSIVE DAMAGES.

   A verdict of $10,000 for loss of the left hand of the operator of a mill for grinding rubber, and loss of more of the right hand than would have been necessary, but for the negligence of the master, is not excessive.

   [Ed. Note.—For other cases, see Damages, Cent. Dig. § 383; Dec. Dig. § 132.*]

Appeal from Kings County Court.

Action by Daniel Deegan against the Gutta Percha & Rubber Manufacturing Company.  From a judgment for plaintiff, and from two orders, respectively, denying a motion to set aside the verdict and a motion for new trial, defendant appeals.  Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Frank V. Johnson, for appellant.

Martin T. Manton, for respondent.

JENKS, J.  This action is by a servant against master for negligence.  A notice under the employer's liability act (Laws 1902, p. 1748, c. 600) was served.  The servant worked at a mill that was one of a series all worked by a shaft that ran underneath them and that was driven by steam power.  The mill consisted of two rollers, turning toward one another, on the same plane.  The rollers were of iron 12½ inches in diameter and 36 inches long.  There was a clutch and pinion wheel on the shaft, which transmitted power to a large gear wheel which turned the back roller, which worked another gear wheel that turned the front roller.  The servant's work was to feed the rollers from above with crude pieces of rubber to be ground down.  The distance between the rollers could be changed by screws, and on the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

day of the accident the plaintiff had spaced them at ½ an inch. While at his work the plaintiff's right hand was caught in the rollers, and then his left hand, so that he lost his right hand 3 or 4 inches above his wrist, and the thumb, the first and middle fingers, and a part of. the palm of his left hand. The learned trial court at the close of the case submitted certain specific questions to the jury which were as follows, and to which the jury gave the answers indicated:

"(1) Was the plaintiff himself guilty of any negligence that contributed in any degree to his getting hurt? No.

"(2) Was the plaintiff's hand caught solely on account of the negligent failure of the defendant to maintain the bearings of the back roller in a condition reasonably safe for the plaintiff to work upon the mill? No.

"(3) Was there a negligent failure on the part of the defendant to maintain in reasonably safe condition a shifter for detaching the clutch, that the plaintiff could have operated after his right hand was caught to stop the mill, and thereby prevented his being injured to the extent that he was injured? Yes.

"(4) Did the plaintiff assume the risk of injury from worn bearings of the back roller, if you find such worn bearings existed? No.

"(5) Did the plaintiff assume the risk of injury from the absence of the shifter, if you find that it was absent? No.

"(6) What is a fair compensation for any injury that you may find that resulted solely from the negligence of the defendant, if any such be found by you? $10,000.

"The Court: In fixing this sum of $10,000, I want it understood whether the jury have fixed those damages with reference entirely to the damage which happened from the lever not being there. Do you understand? You have said that the plaintiff's hand was not caught on account of any negligence connected with the roller. That question you have answered, 'No.' So, of course, you could not give any damages for his hand being caught in that way. Therefore the damages that you have found must necessarily be the damages which came from the negligence in not having the shifter there, and which would be only for a part of the damage. You understand that, do you? (The jury answer in the affirmative.)"

The learned counsel for the appellant admits in his points that the jury were "clearly justified in finding that the mill in question was not equipped with 'a shifter for detaching the clutch that the plaintiff could have operated after his right hand was caught to stop the mill,'" but contends that a finding that there was "'a negligent failure on the part of the defendant' to provide or maintain such a shifter is wholly unwarranted by the evidence." This contention rests upon the proposition that under the circumstances such a device could not have been worked by the plaintiff to throw out the clutch after his right hand had been caught; and it is pointed out that there is testimony that, before the jaws of the clutch became worn by use, the pressure (10 to 25 horse power) during the grinding was so great that one man could not have thrown out the clutch by the shifter. But, on the other hand, the plaintiff's witness Beyer, who had worked in the defendant's shop as a machinist and was familiar with this particular mill, testifies that, assuming the mill to be loaded (i. e., grinding down the rubber) and a shifter on the clutch, it could be thrown out by an ordinary man with one hand; and the defendant's witness Bolton, a master mechanic in the defendant's employ, on cross-examination, after he had stated that when the mill was loaded the clutch could not be thrown out, was asked:

"Q. It is a fact, isn't it, that when these lugs or ears are worn some, it slips out itself? A. I just stated in a case where the lugs are worn— Q. The lugs were worn in that case? A. They were worn in that case. By the Court: I could not say whether they were worn enough so that a man could throw it out. If the rest of the jaw was parallel, it could not be thrown out."

Beyer, who had been called in to examine this mill the day before the accident, testifies in detail as to the worn condition of several of its parts, and says, among other things:

"The ends of the lugs of the clutch were worn about a quarter of an inch; right on the far end. They were worn about a quarter of an inch—the ends of this. * * * When there is a wear on the lugs of the clutch they could be repaired by taking a hammer and chisel and chipping the lugs of the clutch straight. I have not seen them doing that only once."

The plaintiff finally testifies, although his testimony is not clear nor consistent upon this point, that the mill was not loaded—that the rubber slipped down as his hand went in. But, whether the machine was "loaded" or not, the evidence did not justify the court in withholding from the jury the question as to the shifter on the ground that it could not have been worked by one man at the time. There is no dispute that if the mill was not loaded (i. e., if the rollers were revolving, but the rubber had passed through them) the shifter could have been used by a single man.

It is next argued that, even if the clutch could have been used by one man, the evidence does not warrant a finding that the plaintiff could have used it after his right hand was caught. This argument rests primarily upon two bits of testimony: First, the testimony of the plaintiff, "From the point where I was caught in the rollers the shifter was about 4½ feet or 5, as near as I can get;" second, the evidence is that to disengage the clutch it was necessary to push the shifter from the operator a distance of from 20 inches to 2 feet farther away from the point where the plaintiff was caught. The conclusion drawn is that it would have been necessary for the plaintiff, with his right hand caught in the rollers, to have extended his left hand toward his right side a distance of at least 6 or 7 feet from the point where his right hand was caught. But in the first place nothing is more inaccurate than a witness' estimate of distance (Moore on Facts, § 397, citing The Royal, 54 Fed. 204–206, 4 C. C. A. 285; Carlisle v. Cooper, 19 N. J. Eq. 256–267; Blatch v. Archer, 1 Cowp. 63–65; Chrystal v. Troy, etc., R. Co., 105 N. Y. 164–170, 11 N. E. 380), and demonstrations which are based upon such estimates are only as cogent as the estimates are certain. Further, the plaintiff admittedly was at work feeding the rollers, which were but three feet long, and there is no question but that he stood within the space they occupied. If the shifter was not there, of course, the ability of the plaintiff to use it is conjectural. On the one hand, there was evidence that the plaintiff under the conditions could not have reached it to work it. On the other hand, the defendant's expert Smith testifies to the court:

"I presume he could get hold of it if he had his right hand caught in the rollers; but I have never known it to be such. The question is, could he shove it over two feet, if he had hold of it? * * * If it was unloaded, he possibly could shove it over with his hand in it. I have my doubts about it."

To defendant's counsel:

"We will say, if he was right at that end, he might possibly reach it. He could reach it as it was engaged, and in order to disengage it he would have to push it two feet."

The defendant's expert Vorhies on cross-examination, referring to the clutch, says:

"The operator, standing in front of the mill, could throw it out, if he stepped over to the clutch. If he stood at the frame, he could, by reaching over; if he was in the middle, he could not do it. The rollers are only 36 inches in length on this kind of machine. If he stood at the end of the frame, he could reach it. If he was standing at the end of the roller, near the frame, he could reach it. * * * The top of the shifter bar, I should say, is 18 inches from the ground. A man could not kick it over with his foot. There is too much impact. He could push it over with a hard pressure of the foot. He couldn't kick it over with his foot, as I understand the term. If his foot struck the bar with sufficient force, 1 doubt if he could disengage the clutch, as I understand the term. * * * After you press on the clutch, after you take hold of the handle bar and push it over, after you get it started, it is necessary for you to keep your hand on until it is disengaged. If the cars or the lugs of the clutch was warm, it slips off of itself sometimes, and it would only take a start for it to slide off. That is about all it does at any time. It is not absolutely necessary to keep your hand there until it gets over the full length of it."

A mill of similar construction was produced on the trial. I think that, simply upon the estimate of distance, which was "as near as" the witness could "get it," and in view of the evidence quoted, it was not for the court to say that the use of the shifter was a physical impossibility; and I think that the evidence was sufficient to sustain the answer of the jury to a question which belonged to them.

It is further contended that the absence of the shifter was not the proximate cause of the accident, and that there was no principle which permitted the jury to speculate whether the injuries were greater for that reason than they would have been. The plaintiff is not suing because of the accident, but because of the injury arising therefrom, which is attributable to the negligence of the defendant. It is true that if the plaintiff's hand had not been caught, and if he had not attempted to release it, he would not have been injured, and that the jury have exonerated the defendant from negligence so far as the catching of the right hand is concerned. But the accident of having the hand caught was the condition, not the cause, of the injuries. It was not the "causa causans," but the "causa sine qua non." Under the instruction of the court, the jury have acquitted the defendant of negligence, save as to the omission of a shifter, but compensated the plaintiff for such injuries as resulted (after the right hand was caught) from that omission. The negligence as found was not in the maintenance of the machine in such a condition as permitted the right hand to be caught, but in not providing a proper apparatus whereby it could be stopped and the injury thus lessened. In other words, after the plaintiff, without fault on either side, came into a condition which, unless arrested, would and did result in greater injury to him, the defendant was found guilty of negligence in not affording to him means to change that condition. The principle is expressed by Judge Cooley in his Torts, 69:

"But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission of another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which is more remote."

In Ehrgott v. Mayor, 96 N. Y. 283, 48 Am. Rep. 622, the rule of Ring v. City of Cohoes, 77 N. Y. 83, 33 Am. Rep. 574, is stated and approved:

" 'When two causes combine to produce an injury to a traveler upon a highway, both of which are in their nature proximate—one being a culpable defect in the highway, and the other some occurrence for which neither party is responsible—the municipality is liable, provided the injury would not have been sustained but for such defect;' and 'when several proximate causes contribute to an accident, and each is an efficient cause, without the operation of which the accident would not have happened, it may be attributed to all or any of the causes; but it cannot be attributed to a cause unless, without its operation, the accident would not have happened.' "

See, too, the general principle as applied in Weitzman v. Nassau Electric R. R. Co., 33 App. Div. 585, 53 N. Y. Supp. 905; Green v. Metropolitan Street R. Co., 42 App. Div. 160, 58 N. Y. Supp. 1039; Porcella v. Mut. R. F. L. Ass'n, 50 App. Div. 158, 63 N. Y. Supp. 599; Johansen v. Eastman's Co., 44 App. Div. 270, 60 N. Y. Supp. 708, affirmed 168 N. Y. 648, 61 N. E. 1130; Horning v. Hudson River Tel. Co., 111 App. Div. 122, 97 N. Y. Supp. 625; Davies v. Mann, 10 Mees & W. 546; and Shearman & Redfield on Negligence, § 99 et seq.

A judgment exactly in point is Taylor v. Felsing, 164 Ill. 331, 45 N. E. 161, when the servant went into a passageway near the gearing of cog wheels and slipped, so that he fell into the wheels. Among other acts or omissions the plaintiff charged negligence in the absence of a known apparatus to stop the wheel. It was contended that, if the plaintiff came into contact by an accident of his foot slipping, the defendant was not liable; but the court held that the fact that the slipping was accidental could not relieve the master, if he were guilty of such negligence in respect to the machine, and the plaintiff exercised due care. A number of illustrative cases, including the last cited, are collected by Labatt on Master and Servant, in his note on page 864.

Moreover, it seems to me that there can be no question that the absence of a shifter was the only cause of the injuries inflicted on the left hand, for the plaintiff testifies that it was free at the time his right hand was caught, and that it was drawn in only because he attempted to arrest the roller, so as to free his right hand. To my mind the situation is not, as contended, identical with that in Gordon v. Reynolds Card Man. Co., 47 Hun, 278. In that case it was said that the omission to supply a shifting device was not the cause of the injury:

"If it had been supplied, it would have in no manner prevented the injury which he received; for no period of time intervened between the commencement and the full consummation of the injury, in which he could have made use of such an apparatus to stop the movement of the rollers. That was arrested by his hand passing in between them, and no determinate period of time intervened between the commencement and the completion of this injury."

But in the case at bar the evidence is that the outer roller revolved with but 9 revolutions a minute and the inner roller with but 15, and the jury could have found that a drawing in of the hand so as to re-

quire its loss three or four inches above the wrist must have been a comparatively slow process. And, as I have shown, the jury could have concluded that the left hand would not have been injured at all, if the shifter was there and the plaintiff could have reached it, because his left hand became entangled only in his attempt to stop the machine, or at least to release the other hand.

The case does not turn upon the plaintiff's working upon a machine without the shifter, within the principle of Hickey v. Taaffe, 105 N. Y. 26, 12 N. E. 286, or Sweeney v. Berlin & Jones Envelope Co., 101 N. Y. 520, 5 N. E. 358, 54 Am. Rep. 722, but rather upon Rice v. Eureka Paper Co., 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585, in that the plaintiff testifies that he had said to the defendant's foreman, O'Halloran, that certain timbers should be taken off of the shafting and "a shifter" put on the clutch to make the mill safe, and O'Halloran, whose own evidence is sufficient to permit the jury to find that plaintiff had the right to rely upon his promise, said on Monday that he would make the repairs right away, that it would soon be repaired, and on Saturday had said it would be repaired in the early part of the week. The accident occurred on that Monday, between 12 m. and 1 p. m. In Sweeney's Case, supra, the court, per Danforth, J., after speaking of risk of working on a machine which in the opinion of the servant lacked some apparatus, declared that the servant had no grievance when continuing to work with knowledge of a defective machine:

"The 'Adams machines,' as the plaintiff's witnesses proved, were uniformly furnished with the pedal. A clutch had never been seen on one. They were for different purposes. The pedal was to stop the machine; the clutch was to put the machine in motion. But we think there was no promise made to the plaintiff, nor inducement offered him to take the risk. It cannot be said that there was any connection between the conversations above set forth and the continuance of the plaintiff in the defendant's employment. Nor does the complaint allege any. On the contrary, it alleges a simple request 'that the change or improvement be made,' not a promise or suggestion that it should be. There was no direction by the master, nor reliance upon the judgment of a superior officer."

I think that it cannot be said that the damages as found could not and did not represent the compensation for the injury caused by the negligence of the defendant; for, although the jury absolved the defendant from negligence in the maintenance of the back roller, it yet found it negligent in not providing a shifter, and avowedly assessed the damages for that negligence alone. It could have found, as I have said, that the shifter could have been used to stop the machine before the injury to the right hand was so severe, and have determined the compensation in view of the increased injury to the right arm and in view of the entire injury to the left hand, or it could have determined the compensation upon the injury to the left hand alone.

I think that the amount, $10,000, cannot be said to be excessive, in view of the seriousness of such injuries, which I have already told; and I think that the jury could thus eliminate the damages—i. e., determine compensation for the negligent omission to supply a shifter, although it acquitted the defendant of negligence in maintenance of the

roller. As to the principle, see Nitro-Phosphate Co. v. London and St. Katharine Docks Co., 9 L. R. Ch. Div. 503.

Upon a former appeal herein, reported in 118 App. Div. 891, 103 N. Y. Supp. 1122, we affirmed an order of the Trial Term for a new trial, not upon the proposition that the plaintiff's theory was necessarily so counter to a physical and scientific fact as to be incredible as matter of law, but in that it appeared that the trial court granted the order upon the question of the weight of the evidence.

The judgment and orders are affirmed, with costs. All concur.