## COLLINS v. WATERBURY CO.

(Supreme Court, Appellate Division, Second Department. May 26, 1911.)

1. MASTER AND SERVANT (§ 153*)—DUTY TO SERVANT—INSTRUCTIONS.

Where a common laborer is put in charge of machinery which he is not acquainted with, the master is bound to instruct and qualify him for that new duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 314–317; Dec. Dig. § 153.*]

2. MASTER AND SERVANT (§ 158*)—INJURY TO SERVANT—PROXIMATE CAUSE.

Where a servant was set to work feeding rubber into a pair of slowly moving steel rollers, half an inch apart, without being told of a foot pedal by which their motion could be stopped almost at once, while the ordinary hand lever for stopping was very difficult to move when there was anything between the rollers, and by slipping while feeding material got his fingers caught and his hand and lower arm drawn in and crushed before others could stop the rollers by the hand lever, as to so much of the injury as might have been prevented by plaintiff's use of the pedal had he known of it, the master's failure to instruct plaintiff as to the foot pedal and its use was the proximate cause.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 304; Dec. Dig. § 158.*]

3. MASTER AND SERVANT (§ 218*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

The fact that plaintiff undertook to feed material to a pair of rollers without knowing of a foot safety device by which the rollers could be stopped instantly did not involve his assumption of the risk of any injury because of his inability to stop the machine with the usual hand lever, where he was unaware that the hand lever was unavailable when there was anything between the rollers because of the force required to move it, never having had occasion to use it under such circumstances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 601–609; Dec. Dig. § 218.*]

4. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

Where, though plaintiff could not attribute part of the injury to his hand between rollers to defendant's negligence, the further crushing of the hand and arm, so that it had to be amputated shortly below the elbow, was due to defendant's negligence, a verdict for $5,000 was not excessive compensation for such further injury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

5. COSTS (§ 164*)—EXTRA ALLOWANCE—DIFFICULT AND EXTRAORDINARY CASES.

An action against a master for injuries to a servant by the crushing of his hand and arm between slowly moving rollers into which he was feeding material, the negligence claimed being the failure to instruct the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

servant as to an emergency appliance by which the rollers could be stopped at once, *held* not such a difficult and extraordinary case as to warrant the grant of an extra allowance to plaintiff's attorney.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 620–636; Dec. Dig. § 164.*]

Appeal from Trial Term, Kings County.

Action by Arthur Collins against the Waterbury Company. From a judgment for plaintiff, defendant appeals. Modified and affirmed. See, also, 139 App. Div. 916, 124 N. Y. Supp. 1113.

Argued before JENKS, P. J., and THOMAS, CARR, WOOD-WARD, and RICH, JJ.

James J. Mahoney (M. J. Wright, on the brief), for appellant.
Frederick S. Martyn, for respondent.

JENKS, P. J. The action is by servant against master for personal injuries. The defendant appeals from a judgment upon a verdict against it at Trial Term. The plaintiff worked at a rubber mill, which had two parallel rollers of smooth steel, each 16 inches in diameter and 36 inches in length. Power was furnished from a moving shaft underneath the floor. The front roller made 8 and the back roller 10 revolutions a minute. The rollers mixed chemicals with rubber, and masticated pure rubber. The machine was furnished with a side lever within ready reach of the workman's hand, which acted to engage or to disengage the clutch upon the shafting with a loose pinion wheel. This lever was used to start or to stop the machine when the rollers were free from rubber. But, when there was rubber between them, the clutch could not be thrown out by this lever, except with the application of "a good deal of force," because of the friction on the clutch. For that reason, in order to stop the machine in "case of an emergency" and to obviate the danger of the rollers to the workman, the machine was furnished also with a "safety throw-out," worked by a foot pedal, whereby the machine could be stopped almost instantly. This "throw-out" consisted of a long piece of metal which, when the foot pedal was touched, dropped upon the clutch, and acted automatically as a wedge to disengage the clutch. The testimony of the plaintiff is as follows: He was replacing between the rollers a piece of rubber which had dropped off into a pan underneath (a frequent occurrence), when he slipped, and the end of his finger was caught between the rollers. There was rubber between the rollers when he was picking up this piece out of the pan. He tried to stop the machine immediately with the lever, but could not, whereupon he screamed, and two workmen ran over and together stopped the machine by the lever. Meanwhile the plaintiff's hand and arm had been slowly drawn in and crushed by the rollers, so that the arm was afterwards amputated a little space below the elbow. At the time his finger was caught, the rollers were gauged at about half an inch apart.

The learned trial court submitted to the jury as the sole question of liability whether the master had instructed the servant as to "these brakes and the purpose of the brakes"—"how to stop the machine in

case of accident." It further instructed the jury that, if the master had done so, their verdict must be for the defendant, but if, on the other hand, the master had not instructed the servant, the further question arose whether the servant knew of the safety brake and the safety appliances; and that, if he knew of that, the failure of the master to instruct would not make any difference. The learned court further told the jury there was another question in the case—whether the servant assumed any obvious danger, anything which a reasonable man should have perceived and which he should have observed and avoided.

[1] The duty is devolved upon the master of a servant, hitherto in the capacity of a common laborer, before the laborer is put in charge of machinery with which he is not acquainted, to instruct and to qualify him for that new duty. Brennan v. Gordon, 118 N. Y. 489, 23 N. E. 810, 8 L. R. A. 818, 16 Am. St. Rep. 775. The plaintiff testified that he was a potter by trade, that he was first put to work by the master at emptying rubber out of bags, but that shortly thereafter he was told to go on night work, and that the assistant foreman would show him what to do; that the assistant foreman showed him how to put the rubber into the machine and how to cut it; that it took the assistant foreman a few minutes to show him this; that the assistant foreman then stood there awhile and then went away; and that the assistant foreman did not say anything else to him. The plaintiff worked at two mills, which were of the same general character, of which one he calls the "little mill" and the other the "big mill." He testifies that no one ever showed him how to stop the machine or to start it. His work was in the night, and he testifies that both when he came to the work and when he left in the morning the mills were going. He testifies that he stopped the "little mill" by the lever twice when he had seen other people stopping it, but he had never stopped the "big one" (referring to that at which he received the injury), that he had no reason to stop it, and, when he had occasion to stop the "little mill," he never did so when rubber was in it. He testifies that during his work there he had never seen any mill stopped by any one when there was rubber between the rollers; that he believed that he could stop the machine by the use of the lever; that he had never noticed this foot pedal nor had seen it used; and that he did not know that the machine, or any other machine in the factory, was equipped with it.

[2] It is contended that the failure to instruct was not the proximate cause of the accident. This is true if we mean that such failure was not the cause of the plaintiff's finger being caught between the rollers. That entanglement was due to his slipping while engaged in his attempt to place rubber between the rollers, which was a part of his work. That is, I infer from his testimony that his finger went down between the rollers in consequence of his slipping. He does not complain of this "accident," but of the fact that the master who had furnished a device for stopping the machine instantly when it was filled with rubber had omitted to instruct him of the existence and the use thereof, so that he was unable in his ignorance to stop the machine

until the rollers had gradually drawn in not only his finger, but first his hand and then his arm. The evidence does not justify a conclusion that the plaintiff was negligent as matter of law in bringing his finger in contact with the rollers, and, on the other hand, there is no negligence imputable to the master in the maintenance of the machine so that such contact with the rollers was possible. But the proposition is that, after the plaintiff without legal fault on either side came to a condition of some injury which unless changed must result in greater injury, such condition was not changed because the master had not instructed the servant as to the device at hand for that purpose. In Deegan v. Gutta Percha & Rubber Manufacturing Co., 131 App. Div. 101, 115 N. Y. Supp. 291, we discussed this question, and the writer of the opinion of the court in that case said:

"The principle is expressed by Judge Cooley in his Torts (page 70): 'But, if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote.'"

Many cases were cited as illustrative of that principle. And it was also said:

"A judgment exactly in point is Taylor v. Felsing, 164 Ill. 331, 45 N. E. 161, when the servant went into a passageway near the gearing of cogwheels, and slipped so that he fell into the wheels. Among other acts or omissions the plaintiff charged negligence in the absence of a known apparatus to stop the wheel. It was contended that, if the plaintiff came into contact by an accident of his foot slipping, the defendant was not liable. But the court held that the fact that the slipping was accidental could not relieve the master if he were guilty of such negligence in respect to the machine, and the plaintiff exercised due care. A number of illustrative cases, including the last case cited, are collected by Labatt on Master and Servant in his note on page 864."

Much of the discussion in Deegan's Case is, I think, pertinent to the case now under review. If the evidence justified the conclusions that the plaintiff, if he had known of the "throw-out," could in the exercise of due care under the circumstances have used it so as to avert at least a part of his injuries, that the plaintiff was excusably ignorant of the device, that the master had omitted to instruct him as to the existence and use of such device, then I think that the jury could have found negligence in the master which, in the absence of any other contributory negligence on the part of the plaintiff, would have justified a verdict in compensation of such part of his injuries.

Stress is put upon the circumstance that the plaintiff "slipped," but the testimony of the plaintiff is:

"At the time I was injured, I was putting the rubber on. I was putting the rubber on the rolls, and the first piece I put on it seems it did not stick and dropped into the pan. I stooped down to pick it up and the pan come away with me. The pan goes as you are picking it up, and I kind of slipped, and my foot and my hand went. I turned around, because I seen them stopping the machine by that lever. I tried to stop it. At the time I slipped, my hand just catched my fingers between the rolls. My hand was between the rolls. I was putting the rubber in with my hand at that time. I say I put in a piece of rubber, and it did not stick, and dropped into the pan, and I stooped down to pick it up to put it on the rolls again, to take it out of the pan and put it on the rolls again, and putting it on the rolls I slipped."

Thus it appears that, when the plaintiff slipped, he was engaged in putting the rubber into the mill—the work which he was required to do. This distinguished the case from several cases cited by the learned counsel for the appellant. In Buckley v. G. P. & R. M. Co., 113 N. Y. 540, 21 N. E. 717, the plaintiff's foot slipped, he threw out his hand to save himself from falling, and thrust it into the cogs of some wheels about 9 inches from the end of the cylinder, so that his hand was crushed and he was injured, because, as the court say, he slipped and fell, and instinctively threw out his hands to recover himself. In Valentino v. Garvin Machine Co., 139 App. Div. 139, 123 N. Y. Supp. 959, the servant while engaged in running a drill machine slipped on the floor of the factory, and was injured by coming in contact with some unguarded cogwheels, and we said, by Burr, J.:

"It is difficult to understand in this case, considering the position in which the cogs were placed, how plaintiff could get his hand into them in the ordinary conduct of defendant's business. He does not claim that he did. He says that he slipped, and in that way thrust his hand into the machine. The slipping was the primary cause therefore."

In Welch v. Waterbury Co., 136 App. Div. 315, 120 N. Y. Supp. 1059, the plaintiff had started to walk down a passageway between a row of machines to seek the toilet room, when he slipped, and thus fell into the gears of the machine. There is a manifest distinction between these cases and this case, in that the plaintiff, when he slipped, was engaged in his work. But in any event, as I have said, the liability does not arise from the fact that the servant came into contact with the machine, but because, after he had come into such position, he suffered further injury because he had not been instructed by the master how to use this device to stop the machine instantly.

[3] I think the argument as to the assumption of risk cannot prevail. The plaintiff testifies that he had seen the "little machine" stopped by the use of the lever, and he himself had used the lever on that machine. But there is no proof that he knew or should have known that he could not have stopped it by the use of the lever when it was full of rubber, for he says he never saw a machine stopped at all under that condition.

Various exceptions are taken to the refusals to instruct the jury. The propositions thereof have been incidentally discussed in the course of this opinion. None, therefore, requires further discussion except the refusal to instruct as follows:

"If the plaintiff undertook to operate the machine not knowing that there was a foot safety clutch thereon, he assumed the risk of any injury which might happen because he might be unable to stop it with the lever."

But, as I have said, there was no evidence that the plaintiff knew or had reason to believe that he might be unable to stop it with the lever. His testimony is that he had always seen it stopped with the lever. As this had been done only when it was free from rubber, he had no reason to suppose that he could not stop it when there was rubber or other impediment between these rollers.

[4] It is further contended that the damages were excessive, based upon improper evidence, and not properly limited by the charge. It is

argued that the model of the machine indicates that from two to five inches or more of the plaintiff's hand must have been engaged before the foot clutch could have worked under any circumstances, and that, therefore, the more serious part of the injury had obviously occurred before any diligence on the part of the plaintiff could have succeeded in stopping the machine. I fail to find that any exception was taken to the instruction as to the damages, or that any request was made as to how much of the injuries should be the subject of compensation. I am not prepared to say, even if the plaintiff must have suffered some injury to his finger or his hand as the result of contact with the rollers for which he could not recover compensation, that the amount of damages awarded—$5,000—is excessive for so much of the injuries which he might have prevented if he had known of the existence of the throw-out, the purpose thereof, and could have used it to stop the machine after his finger had become entangled in it.

[5] I think, however, that the motion for the extra allowance should not have been granted, as the case is not difficult and extraordinary. Standard Trust Co. v. N. Y. C. & H. R. R. Co., 178 N. Y. 407, 70 N. E. 925.

Judgment modified by striking out the provision for extra allowance, and, as so modified, the judgment and order should be affirmed, without costs. All concur.

---

### CONNELL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. May 26, 1911.)

1. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

In an action against a railroad for death of a servant killed by a train while standing between the track and a wall, and not in his place of work, through defendant's alleged negligent failure to signal, evidence *held* insufficient to support a judgment for plaintiff.