HORNING v. HUDSON RIVER TELEPHONE CO. et al.

(Supreme Court, Appellate Division, Third Department. January 8, 1906.)

1. ELECTRICITY—PERSONAL INJURIES—LIGHT WIRE TOUCHING TELEPHONE WIRE—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action against a telephone company and an electric light company for personal injuries alleged to have been caused by the negligence of defendants in allowing their wires to come in contact so that a fireman touching a telephone wire in the discharge of his duty was injured, evidence *held* sufficient to support a finding that defendants were negligent in allowing the wires to come in contact.

2. SAME—PROXIMATE CAUSE.

Where a telephone wire supported on wooden buildings was strung over a defectively insulated electric light wire, so that when one of the buildings burned the telephone wire fell and came in contact with the electric light wire, resulting in injury to plaintiff when he touched the telephone wire, the failure to so insulate or guard the electric light wire as to prevent the telephone wire from coming in contact with it if it fell was the proximate cause of the injury.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Electricity, § 9.]

Appeal from Trial Term.

Action by Nathan L. Horning against the Hudson River Telephone Company and another. From a judgment for plaintiff, defendants appeal. Affirmed.

The defendant gas and electric company is a duly organized corporation, exercising its franchise to furnish light and power by electricity to the city of Johnstown, and it was lawfully operating in the streets of such city. It:

had extended its wires' through West Montgomery street, and such line seems to have been in all respects well and thoroughly constructed and insulated from the ground at that locality. The defendant telephone company was also a corporation lawfully exercising its franchise to act as such through the streets of such city. ¡Some six or seven years after such light company had erected its said lines through said street, such telephone company carried its wires from the West Mill of one Stewart, and which was on the west side of such street, across said street to the East Mill, so-called, of said Stewart on the easterly side of such street, and thence from such East Mill to the Geisler Mill, so-called; and the only support of such wires were the wooden buildings to which they were attached. On the night of July 6, 1903, the Geisler Mill took fire and burned down. During the progress of the fire, the plaintiff, who was a member of the fire department of said city, on his way to such burning mill, passed through a lane on the premises of Stewart, and which was used in connection with such East Mill, and found the telephone wire that had extended from Stewart's East Mill to the Geisler Mill lying across such lane and about breast high, and evidently an obstruction to any hose cart or fire engine that should attempt to pass through there. He, with Stewart, who was with him at the time, took hold of such wire and attempted to break it and remove it from that position, and, after continuing such effort for a short time, he received a shock which resulted in a very serious burning and injury. For the injuries so sustained he brought this action against these defending companies, claiming that it was caused by their negligence. Such claim of negligence was based upon the proposition that the current which injured the plaintiff had been diverted from the electric company's wire by the telephone wire having fallen upon, and come in contact with, such wire, and that such contact was caused by the negligent manner in which such wires were put up and maintained. The jury rendered a verdict for the plaintiff and against both defendants, and from the judgment entered thereon, and from an order denying a motion for a new trial, this appeal is taken. Further facts appear in the opinion.

Argued before PARKER, P. J., and SMITH, CHASE, and CHESTER, JJ.

John A. Delehanty and James J. Farren, for appellant telephone company.

Fred Linus Carroll, for appellant electric company.

Andrew J. Nellis, for respondent.

PARKER, P. J. By the evidence in this case, this situation was presented to the jury: The light company had constructed its poles and wires through West Montgomery street. It was lawfully authorized to use such street, and such construction was the usual and standard one. The span at the place where the contact complained of took place was upon good substantial poles, well insulated from the street, and was 168 feet in length. The telephone company thereafter erected its line into that part of the city, and stretched a wire some eight feet above the light company's wires, crossing Montgomery street and the Cayadutta creek adjacent thereto, and also over a bridge that crosses such creek. This locality is in the extreme suburbs of the city, and where the buildings are some considerable distance apart. Such telephone wire, instead of being supported by poles, is attached to brackets which are fastened to the roofs of the wooden buildings some 30 feet from the ground. The west end of such telephone wire was attached to a bracket fastened to the roof of Stewart's West Mill, so-called. It then extended across the creek and street at a height of eight feet above the upper wires of the electric lines, and was fastened to a bracket on Stewart's East Mill, so-called. It then proceeded in a northeasterly direction, across private property and some 30 feet above the earth, to

the·Geisler Mill, making a span of some 519 feet.  From thence it extended a distance of 260 feet to the Lefler Building, and thence to other buildings and poles connecting with the telephone company's lines throughout the city.  The span from the West Mill to the East Mill over the light company's wires was 232 feet.  It may be assumed that the brackets were well and securely fastened to the buildings, and that the telephone wire was tightly stretched such distance of 30 feet above the earth.  No poles or supports, other than the buildings mentioned, were used, and the spans so created by that method of sustaining the wire were unusually long.  When first put up, this wire was used to furnish telephone service to the several mills in that locality, but for some year and a half before this accident such service had been withdrawn and the use of such wire abandoned; and it is apparent that for that period little attention had been paid to inspecting such wire.  The general construction of the light company's line in Montgomery street was a standard one.  The claim of the plaintiff, however, is that, under the conditions that were presented by the construction and maintenance of the telegraph wire in the manner above stated, and in view of the strength of the electric current which was taken through its upper wires for the purpose of lighting the streets, viz., 3,500 volts, an especial duty was put upon each company to provide other and better safeguards against a contact between their respective wires than were provided, and to prevent, by better insulation of their respective wires, a transmission of the electric current in the event that a contact did occur.  Upon this claim the trial court charged the jury as follows:

"The electric light company says that its plant was standard construction throughout, and that for the ordinary purpose of conveying electricity the plant was beyond criticism.  And unless you find that there was an unusual and extraordinary situation at the bridge, you would find that the electric light company had in use a standard and up to date plant and had taken the precaution usually taken where a telephone wire crosses an electric light wire."

And it also further charged substantially to this effect:  So far as the lighting company is concerned, there is no serious question that this line at this bridge, if it had not been for this crossing, or if the crossing had been made in the usual way, without connection with the buildings, was beyond serious criticism.  But the question is whether the electric light company, in the exercise of reasonable prudence, should have noticed the insulation on the respective wires, that the telephone wire was supported upon ordinary wooden buildings, that such buildings were liable to burn and the wires therefore to come in contact, that if contact did occur trouble would arise; and would a prudent man, under such circumstances, have continued the business of carrying electricity through the streets without doing anything to render it any more safe; and could anything be. done to render it more safe?

Thus it is seen that the issue upon which the jury have passed was a narrow one.  Telephone wires are constantly being taken over electric light wires, and under ordinary circumstances no precautions other than were taken here to prevent contact, viz., a distance of eight feet apart, are deemed necessary; but were the conditions in this case such that reasonable care and prudence required extra precautions?  Would guard wires have tended to prevent contact, and should they have been added by the electric light company in this case?  Could their respective

wires have been so insulated, at the place of this crossing, as to have prevented a diversion of the current in case the telephone wire, for any cause, sagged or fell; and, if so, was there such reason to apprehend a possible sag or fall that a prudent man using such a powerful and deadly current would have so insulated the wires? Such were substantially the questions left to the jury; and whether they were warranted by the evidence in reaching the conclusion which they have reached is the first question for us to examine.

Both companies earnestly contend that, as to a better insulation of the wires, it is plainly shown that there is no insulation either used or made that would be adequate to prevent the transmission of the current from the light wire, carrying the voltage that it did, to the telephone wire, if they came in contact; that therefore neither can be charged with negligence in not so insulating them. Undoubtedly all experts agreed that no such insulation was made or in general use; but, as I understand the evidence, one of the defendants' experts testified that a rubber insulation $5/32$ inch thick would be adequate to prevent such transmission, if sufficient care and attention was given to keep it in proper condition. I do not find any evidence to the effect that such an insulated wire for a distance of 168 feet could not be procured, or that it could not with reasonable effort be maintained in proper order.

As to the protection from contact by the use of a guard wire above and outside of those carrying the electric current, on the light company's poles, the defendants also urge that the proof shows that such wires are nowhere used for such protection, and that their use adds danger to the situation, rather than prevent a contact. After diligently studying the evidence on this point, I do not concur with their counsel that the evidence is conclusive to that effect. Undoubtedly the evidence of the defendants' experts is that such guard wires are not used for such a purpose, and all substantially agree that, under the conditions which this case presents as to the conditions and supports of the telephone wire, they still thought that the electric company's line at this point was well and properly built and up to standard without their use. But some of such expert evidence agreed that such a guard, if "properly installed, inspected, and maintained, would act as a source of safety." And the question is whether in this particular case such a guard could not have been "properly installed, inspected, and maintained," and thus have prevented the contact that worked this injury. I cannot find that it is established by the evidence that it could not, or that its use was either unsafe or impracticable. On the contrary, it seems to me that for the distance of 168 feet, which was the length of the span over which the telephone wire hung, such a guard could have been easily erected and maintained, and I am not prepared to hold that the jury erred in arriving at that conclusion.

The jury have evidently concluded that other practicable provisions against the two wires coming in contact, and the diversion of the current from the one to the other, could have been taken by the defendants, and each of them; and under this evidence I am not disposed to disturb the finding of the jury on such questions.

Of course, the fact that such precautions could have been taken and would probably have prevented the injury, does not render either

defendant liable for this injury, unless it was negligence on its part not to have taken it. Each defendant vigorously urges that, unless the Geisler Mill had burned, the telephone wire would not have fallen, and the method of protecting against contact of the wires and transmission of the current would have been entirely sufficient. And that it is beyond reason to require them to anticipate such burning, and to take unusual precautions in expectation thereof. In other words, they deny that there were any conditions that did or should have suggested a falling wire and extra precautions to prevent it. That I think was a question properly submitted to the jury. Of course, the jury might properly charge the electric company with knowledge of the precise situation of the telephone wire as it was stretched and supported over and beyond its line. It was its plain duty to know that condition, to consider how it affected its own line, and, if there was anything indicating danger, which a reasonably prudent man would take notice of, then such company should have noticed it and protected against it, so far as in the exercise of reasonable care and prudence it could have protected against it.

The plaintiff calls attention to the fact that each of the supports of this telephone wire from and including its west end to the Geisler Mill, and for some distance east of it, was a wooden building, either one of which was much more liable to burn than a pole would be. That the first span from the easterly support of the span crossing the electric light wire, viz., Stewart's East Mill, was 519 feet long, and the further end of that span was the Geisler Mill. No support of any kind for that long distance was between those two mills. So that, if either of those two buildings burned, it was to be expected that both ends of such span would be loosened from its support. And therefore, if either one of the several buildings burned, it was to be expected that the telephone line would be disturbed probably the whole length of it and thus threaten to loosen the telephone wire and cause it to sag or fall. These and sundry other arguments were presented to the jury as showing that reasonable prudence should have discovered that the result of a fire, although as far away as the Geisler Mill, was an event which, if it did happen, would be likely to bring about a contact between the two wires, and very clearly, as they argued, if either building at the east or west end of the telephone span crossing Montgomery street was burned, contact would be sure to follow. The question as to whether each defendant should not in reasonable prudence have so far anticipated the burning of some one of such buildings as to require it to protect against the clear result likely to follow therefrom was in my judgment one of fact for the jury.

We have, then, the decision of the jury, to the effect that, under the circumstances thus presented to the two defendants, it was their duty to have taken other and further precautions against contact by their two wires; and that there were precautions which in the exercise of reasonable inspection and diligence they could have taken; and that their neglect to so take them was a negligent omission which caused the contact now complained of. Taking the whole evidence in this case, I am of the opinion that we should not disturb either of such conclusions.

It is further urged upon us by the defendants that, even though

they were negligent in not better guarding against the contact of their wires and the diversion of the electric current from the one to the other, nevertheless, such negligence was not the proximate cause of the plaintiff's injury, and that therefore he cannot recover in this action.

It is plain that, if by its fall the telephone wire had not come in contact with the electric wire and thereby diverted its current, this injury to the plaintiff would not have occurred. It was the transmission of such current into the telephone wire that was the direct cause of the plaintiff's injury; and, if such transmission may be charged to the negligence of the defendants, it is difficult to see why such negligence is not the direct cause of the injury. There is no intervening cause between such contact and the plaintiff's injury; and, if such contact is due to the defendants' negligence, then such negligence is the direct or proximate cause thereof. It seems to me that the negligence which the verdict of the jury has imposed upon the defendants is a negligence to which the act of contact and consequent transmission of the electric current was due. The precise and only negligence with which the defendants are charged is one that makes them responsible for that contact, and hence concede the negligence, and there is really no question of proximate cause in the case.

It is true that if the mill had not burned, and the telephone wire been thereby torn down, there could have been no injury; but that is because there would then have been no contact of wires. In this aspect, the burning of the mill is a concurrent cause of the injury; but it is the remote, and not the proximate, cause. The defendants' omission to guard against the natural result of such remote cause is the negligent act complained of. It may be that the defendants did not neglect any duty they owed to the plaintiff in not anticipating and protecting against that remote cause. I concede that is a question not without doubt; but, if the jury have correctly resolved that doubt, and, as I said above under all the features of this case it should be left to them to determine, I have no doubt that the defendants' omission to protect against contact of their wires was the proximate cause of this injury; and I do not attempt to analyze the numerous cases on that subject and compare them with the facts of this case. In Laidlaw v. Sage, 158 N. Y. 99, 100, 52 N. E. 679, 44 L. R. A. 216, is quoted a definition from the American Law Review, which clearly illustrates and determines the question whether the burning of the mill or the negligent omission to guard against contact of the wires should be deemed the proximate cause of the plaintiff's injury.

It is manifest that the question as to preventing contact of its wires, and consequent transmission of the electric current, was as applicable to the telephone company as to the other one, and that the jury had the same warrant to charge negligence in that respect against it, if not more; and hence I have not examined the evidence as applying separately to each case. Upon the finding of the jury and the evidence in the case both are to be charged with a negligent omission in that respect.

I have examined the exceptions taken by the respective defendants upon the trial, and do not find any that I think require a reversal of this judgment.

In my opinion, the judgment and order must be affirmed, with costs. All concur.