CHARLES BRAUN, as Administrator of the Estate of NICHOLAS BRAUN, Deceased, Appellant, *v.* BUFFALO GENERAL ELECTRIC COMPANY, Respondent.

Negligence — electric light companies — when required to exercise care to prevent escape of electricity liable to injure persons in vicinity of wires — when negligence of company question for the jury — contributory negligence of person injured by electricity.

While the convenience of electric and telephone wires is obvious and their maintenance should not be burdened with excessive liabilities, still a company maintaining dangerous wires should not be relieved, on the ground of expense, from the affirmative duty of exercising a reasonable degree of care to maintain proper insulation and thereby prevent accidents reasonably to be apprehended.

If an electric light company, maintaining wires for carrying high tension currents of electricity, is reasonably chargeable with knowledge, or, in the exercise of reasonable prudence, is bound to anticipate, that people may lawfully come into close proximity to its wires, either for purposes of business or pleasure, it is under obligation to exercise care to keep the wires in a safe condition.

An electric light company, under a written permission, without compensation, had strung two electric light wires diagonally across a vacant lot, suitable for the erection of a dwelling, in a thickly built up portion of a city.   While engaged in working upon the second story of a house, which was being erected on the lot, directly under and within a few feet of the wires, a carpenter received a shock of electricity from which he died.   In an action against the company it appears that the wires, although not then in service, were carrying electric currents of high voltage; that the insulation thereof was defective and ineffective to protect a person from the electric current; that the wires had not been inspected or repaired since their installation; that there was nothing to indicate who maintained the wires; that there was nothing except difference in size to show, even to an experienced person, that the wires were not ordinary telephone wires or that they were alive and dangerous; and that the ownership of the lot had changed since the installation of the wires.   The trial court dismissed the complaint.   *Held*, error; that it was a question for the jury whether the company ought not, in the exercise of reasonable care and foresight, to have apprehended that the lot, over which the wires were strung, might be so used as to bring people in contact with them and whether, therefore, it was not negligent in failing to safeguard the wires for the protection of persons, like plaintiff's intestate, who were upon the premises, by express request or permission, for a lawful purpose.

The question of the contributory negligence of decedent should also have been submitted to the jury, since there is evidence to support the conclusion that the decedent, in moving about in the course of his work, took hold of the wires for the purpose of passing under or over them, and that he was not guilty of negligence as a matter of law.   This is a case for the application of the rule that, where the injured person is dead, wider latitude should be allowed to the jury in passing upon the question of contributory negligence.

*Braun* v. *Buffalo General Electric Co.*, 132 App. Div. 944, reversed.


(Argued December 16, 1910; decided January 27, 1911.)


APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 14, 1909, affirming a judgment in favor

of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Newton* for appellant.   Whether or not defendant was negligent in not keeping the wires properly insulated was a question for the jury. (*Horing* v. *H. R. Tel. Co.*, 111 App. Div. 122.)   Defendant was negligent in not keeping the wires insulated at this point.   (1 Thompson on Negligence, § 800; *McLaughlin* v. *L., etc., Co.*, 100 Ky. 173.) Plaintiff's intestate was not guilty of contributory negligence, assuming that he grasped the wire. (*Perhan* v. *Portland El Co.*, 33 Oreg. 451; *Caglione* v. *Mt. Morris El. Co.*, 56 App. Div. 191; *Fox* v. *Vil. of Manchester*, 183 N. Y. 141; *Girondi* v. *El. Imp. Co.*, 107 Cal. 120; *Mangan* v. *H. R. Tel. Co.*, 50 Misc. Rep. 388; *Illingsworth* v. *Boston El. L. Co.*, 161 Mass. 583.)

*Alfred L. Becker* for respondent.   The appellant's contention that the defendant was bound to anticipate that any human being would be likely to come in contact with these wires calls for too severe a rule of duty. (15 Cyc. of Law & Pro. 472; Joyce on Electricity, § 445; *Graves* v. *Washington Power Co.*, 44 Wash. 675; *Sheffield Co.* v. *Morton*, 49 So. Rep. 772; *Wetherby* v. *T. S. Gas & El. Co.*, 83 Vt. 189; *Sullivan* v. *Boston, etc., Co.*, 156 Mass. 378; *Freeman* v. *B. H. R. R. Co.*, 54 App. 596; *Brush El. L. Co.* v. *Lefevre*, 93 Tex. 604; *D. C. El. L. Co.* v. *Walters*, 89 Pac. Rep. 820; *Keefe* v. *N. El. L. Co.*, 21 R. I. 575; *M. U. & L. Co.*, v. *Webb*, 33 Ky. Law, 909; *McMullan* v. *E. El. Il. Co.*, 13 Misc. Rep. 392.)   There was no evidence from which it could be found that the plaintiff's intestate was in the exercise of due care. (*Buckley* v. *W. L. Co.*, 93 App. Div. 436; 183 N. Y. 506; *Johnston* v. *O. T. H. E. L. Co.*, 113 N. W. Rep. 526; *Lamb* v. *U. Ry. Co.*, 195 N. Y. 260; *Wiwirowski* v. *L. S & M. S. Ry. Co.*, 124 N. Y. 4; *Wieland* v. *D. & H. C.*

*Co.*, 167 N. Y. 19; *Haertel* v. *P. L. & P. Co.*, 219 Penn. St. 640; *Wilson* v. *N. Y. Mills*, 107 App. Div. 99, 103; *Lester* v. *Crabtree*, 125 App. Div. 617; *O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *Ruppert* v. *B. H. R. R. Co.*, 154 N. Y. 90.)

HISCOCK, J.    While plaintiff's intestate was engaged as a carpenter in the erection of a building on private premises in the city of Buffalo, he took hold of two wires strung and maintained by the respondent across said premises and carrying an electric current of a high voltage.    Inasmuch as the insulation on these wires had become ragged and defective there followed the quite inevitable result — death of the man. The learned courts below have unanimously decided that the intestate was killed without legal responsibility on the part of the respondent for the part which it took in bringing about this result, and in determining whether this conclusion was justified we are called on to consider the rule of care and responsibility which governs a company carrying wires charged with dangerous currents of electricity over private premises in the midst of a large and thickly populated city.

The controlling facts which present this question in this case as they might have been found by the jury are as follows:

The premises where the intestate was at work were part of a lot situate at the corner of Northampton street and East Parade avenue in the city of Buffalo.    The entire lot was thirty feet front on Northampton street and had a frontage on East Parade avenue of one hundred and fifty feet.    Some years before the accident a one-story house had been erected facing on Northampton street and with a yard occupying about sixty feet in depth along East Parade avenue.    In the rear of this lot and fronting on the latter avenue the owner had commenced the erection of what was intended to be a two-family apartment house.    This building had been in process of construction for some time and had reached the point where joists were being laid between the second and third floors at a distance of something over twenty feet from the ground.    As

far back as 1888 or 1889 the respondent, under a written permission, and so far as appears without compensation, had strung two electric wires for the purpose of furnishing electric light to a summer park nearby. These wires from their terminus in the park were carried to a pole in East Parade avenue, and thence diagonally across the premises in question, so that they were situated directly over the building in process of erection. They had not been in service from November until the date of the accident in March, but nevertheless they were carrying a current of between 2,000 and 3,000 volts. They were from twenty to twenty-four inches apart and ran about four and a half feet above the joists on which the deceased was working, making a total distance from the ground of twenty-five or twenty-six feet. There was nothing to indicate who maintained them. It was discovered after the accident that the insulation at and around the point of contact by deceased had become defective and entirely ineffective to protect a person from the electric current, and so far as appears nothing had been done in the way of inspecting or repairing this insulation during the entire time of the service of the wires as above stated, although it appeared that such insulation as was used would not remain effective for more than three years.

The diameter of an ordinary telephone wire which does not carry a current of sufficient voltage to be dangerous is about one-sixteenth of an inch without insulation and the wires in question had a diameter of about five-sixteenths of an inch. The ownership of the premises had changed since the installation of the wires and except for the difference in size there was nothing to indicate even to an experienced person that the wires were not telephone wires or that they were "alive" and dangerous. In fact the contractor for whom the deceased was at work stated that he took them to be telephone wires. The entire neighbourhood, except this one lot, was built up presumably with dwelling buildings. The deceased was called by one of his co-workmen to come and assist in straightening out the joists which naturally required him to

move around on the joists below the wires. He was not seen at the instant when he took hold of the latter, but being attracted by a noise one of the witnesses discovered him with one hand on each wire and hanging down therefrom. Owing to the relative situation of the wires and the joists it would be natural for one desiring to go from one side of the building to the other to raise the wires so that he could pass under or bear down on them so that he could step over.

The question now presented to us is one of those which as a general class are constantly becoming of greater importance. In earlier times the proposition that a man owned all of the space above his land commonly became, after a short distance, one of mere theoretical interest, but with the constantly increasing uses for upper space this is changing, and the subject is continually becoming more and more one of new and practical importance. Recently this court has held in opposition to earlier authorities that an action of ejectment may be maintained for the removal of a telephone wire stretched at considerable height over a man's premises. (*Butler* v. *Frontier Telephone Co.*, 186 N. Y. 486.)

While the measure of liability of one stringing or maintaining overhead wires conducting a dangerous current of electricity has been frequently under consideration, it may be admitted that it has not been determined under circumstances entirely analogous to those now presenting it, and we are, therefore, called on to determine largely by the application of general principles the rule which should be applied.

As a preliminary general consideration counsel for the respondent, in view of the evidence that the insulation such as was originally placed on the wires would be effective for only three years, argues that it would be a great hardship to require a company like the respondent to renew this insulation so frequently, and that as a matter of general policy we should not impose any such burden. It is probable that the weight of the burden is somewhat exaggerated, but however that may be this argument does not impress us as being very decisive of the rule which should be applied in this or similar

cases.   It is a matter of common knowledge that a company like the respondent for its own profit ordinary installs and maintains its wires across private premises without compensation.  ·In a large city overhead wires are apt to be numerous, and there are no such marked characteristics of the different ones as would enable an ordinary. layman to ·distinguish between those which are comparatively harmless, like a telephone wire, and those which are charged with a deadly current like those here.   While the convenience of electric and telephone wires is obvious and their maintenance should not be burdened with excessive liabilities, still it seems clear that a company maintaining dangerous wires should not be relieved on the ground of expense from the affirmative duty of exercising a reasonable degree of care to maintain proper insulation and thereby prevent accidents reasonably to be apprehended to those lawfully coming in the neighborhood of such wires.

When we apply general principles of diligence and care to the respondent in this case its conduct seems to be such that a jury should have been allowed to decide whether or not it was guilty of negligence rather than that the court should have held as a matter of law that it was not guilty thereof.

Little need or can be said about the condition of the wires, for if the respondent owed any obligation whatever of making them safe it would scarcely have been more negligent if, instead of allowing them to remain uninspected and unrepaired as it did, it had strung and maintained absolutely naked wires.   The only question which is at all close is whether the respondent in the exercise of reasonable care and foresight should have apprehended that the premises over which the wires were strung might be so used as to bring people in contact with them, and whether, therefore, it should have guarded against such a contingency.   As indicated, I think this was fairly a question for the jury.   Here was a vacant lot in the midst of a thickly built-up section of a large city. It was no remote or country lot where no buildings could be expected.   The neighboring land was covered with buildings.

It was the only vacant lot in the vicinity. It fronted on a street and there was plenty of space for a building. Now, what was reasonably to be anticipated — that this lot would be allowed indefinitely to lie unimproved and unproductive, or that it, like other surrounding lots, would be improved by additions to the old building or by the erection of new and independent ones? Was it to be anticipated that its use would be an exception to the rule prevailing in the entire neighborhood or that it would be in conformity therewith? It seems to me that the answer to these questions should have been made by the jury, and that the latter would be justified in saying that the respondent was bound to anticipate what was usual rather than that which was exceptional and act accordingly. It does not appear how much this neighborhood may have changed since the wires were first strung, but assuming that it had materially changed in respect of the use of lots for buildings, such a change in a neighborhood for aught that appears in this case requires some time, and as a basis for responsibility it is not too much to charge a company stringing such wires with notice of gradual changes in the locality through which the wires pass.

Of course it is not necessary to say that the respondent might be required in the exercise of reasonable prudence to anticipate that just this particular fashion of building would be erected at just the particular spot where intestate was working. If it could be required to foresee that the lot would probably be built upon, the situation of the wires was such with reference to the ground and the shape of the lot that a jury might fairly say that such building operations were quite apt to bring persons in proximity to the wires and that they should be safeguarded. It is not a satisfactory answer to appellant's claim that the company should have exercised care respecting its wires to say that the intestate or his employer should have noticed them and given notice to remove or make them safe, for, as has been pointed out, there was nothing to indicate to whom the wires belonged or, as matter of law, that they were dangerous.

As has been said, apparently there are no authorities directly in point. Some may be cited, however, which tend to support the conclusions here adopted. The fundamental and general principle that a company like respondent, if reasonably chargeable with knowledge, or in the exercise of reasonable prudence bound to anticipate, that people may lawfully come in close proximity to its wires either for purposes of business or pleasure, is under obligation to exercise care to keep the latter in a safe condition is abundantly established. (*Connell* v. *Keokuk El. Ry. & P. Co.*, 131 Iowa, 622; *Rowe* v. *Taylorville El. Co.*, 213 Ill. 318, 322; *Fitzgerald* v. *Edison El. Ill. Co.*, 200 Penn. St. 540; *Wabash, St. L. & P. Ry. Co.* v. *Locke*, 112 Ind. 404; *McLaughlin* v. *Louisville El. L. Co.*, 100 Ky. 173.)

It is only the application of this general principle which can provoke discussion, and the cases next cited are illustrative of the varying circumstances to which it has been applied, with the result of holding that the defendant might be held negligent for not anticipating and guarding against the accidental contact by an outsider in each case with its wires.

In *Fitzgerald* v. *Edison El. Ill. Co.* (200 Penn. St. 540) it appeared that the intestate, who was a painter, for his convenience went on a roof and, in order to do his work, propped up some of defendant's wires. Subsequently one of these slipped from the prop and killed him because of defect in insulation, and it was held that a nonsuit was improper.

In *McLaughlin* v. *Louisville El. L. Co.* (100 Ky. 173) the defendant was held liable to a painter on a house who came in contact with a nearby wire of defendant which was imperfectly insulated.

In *Griffin* v. *United El. L. Co.* (164 Mass. 492) it appeared that plaintiff was a tinsmith engaged in placing a conductor on a building and was injured through the latter pipe accidentally coming in contact with a defective wire several feet away. It was held that the defendant, owing the duty to use reasonable diligence to keep its wires in repair for every person who for purposes of business might be rightfully on the

premises, was liable although the injuries were the result of an accidental and somewhat novel contact.

*Geissman* v. *Missouri-Edison El. Co.* (173 Mo. 654) is a somewhat analogous case. There the defendant was held liable in a case where deceased, who was engaged in removing a sign, was killed through a wire connected with the sign coming in contact with a defectively insulated wire of defendant several feet away.

In *Daltry* v. *Media Electric L., H. & P. Co.* (208 Penn. St. 403) the defendant was held liable for injuries from a defectively insulated wire which was strung across a private lawn and which came in contact with plaintiff, a boy ten years old, who had passed from the street on to the lawn to play. The court said : " Having constructed the line across the lawn to the house in proximity to the carriageway, it knew that children as well as adults might frequent the way and, hence, the necessity of keeping its wires in a proper condition and repair to avoid danger. It must be presumed that the company also knew what the evidence disclosed as a fact that children used the lawn of the premises near the gateway and in the vicinity of the wire as well as the street in front of the premises as a playground. * * * It was, therefore, the duty of the company * * * to take reasonable precautions to prevent injury to persons who might be at this point."

In *Byerly* v. *Con. Light, P. & I. Co.* (130 Mo. App. 593), although plaintiff was defeated on other grounds, it appeared that the intestate was engaged in working around a pile of refuse produced from a mine growing larger as fresh deposits were made. By reason of this growth, one of the defendant's wires which originally was far enough away not to be dangerous, was finally brought near to the pile so that intestate, as assumed, came in contact therewith. It was held on that branch of the case that it was the duty of defendant, in view of the changes in the pile, either to have insulated its wires or else to have elevated them beyond the line of danger.

In *Temple* v. *McComb City El. Light & Power Company* (Supreme Court of Mississippi, 42 South. Rep. 874) a demurrer

was overruled to a complaint in which it was in substance stated that the plaintiff, a boy ten years old, had been injured by coming in contact with a live wire strung by defendant through a tree with branches reaching nearly to the ground in a thickly populated neighborhood and in which plaintiff and other children played. In holding that the bill stated a cause of action, the court did so not on the ground that the defendant actually knew of the habit of the plaintiff and other children, but on the ground that "it did know the tree, the kind of tree, and, knowing that, knew what any person of practical common sense would know — that it was just the kind of a tree that children might climb into to play in the branches."

In *Horning* v. *Hudson River Tel. Co.* (111 App. Div. 122 ; affirmed, 186 N. Y. 552) plaintiff recovered for injuries which were primarily caused by a disused telephone wire dropping upon an electric light wire, neither being properly insulated, and whereby a powerful current was conducted to his body while handling the telephone wire. The contact of the two wires was caused by the burning of a building to which the telephone wire was attached by brackets. On appeal the charge of the trial court was approved, which, amongst other things, instructed the jury in effect that one of the questions in the case was whether the electric light company in the exercise of reasonable prudence should have observed the insulation of the wires and that the telephone wire was supported by a wooden building which was liable to burn causing the wires to come in contact as they did.

The true scope of these decisions as indicating the range of probabilities which an electric company may be required to anticipate is made all the clearer by reference to a single case cited by the respondent, in which it was held that the occurrences leading to the accident were so irregular and unusual that such a company could not reasonably be expected to foresee them.

In *Sheffield Co.* v. *Morton* (49 South. Rep. 772) the attempt was made to recover for the injuries to a boy who had come

in contact with one of the defendant's wires.    But it appearing that the wire in question was maintained on a bluff out of reach of persons resorting to the neighboring level places in an ordinary and rational way, and that the plaintiff came in contact with it only after climbing into a position of difficulty on the bluff and of obvious danger independent of the wire, it was held that defendant. could not be held liable for not anticipating such a situation.

While it may be going a step further than these authorities went to decide that respondent may, if a jury sees proper, be held to the obligation of anticipating the use of the land under its wires for building purposes which would bring people in close proximity to the latter, I think this step is a logical and proper one, and, therefore, should be taken.

If, as has been reasoned, the respondent could be held to anticipate such use of the lot as was made and safeguard its wires for the protection of persons liable to come in contact with them, this obligation would be broad enough to include as amongst those entitled to its protection one like intestate, who was upon the premises by express request or permission for a lawful purpose.  (*Griffin* v. *United Electric L. Co.*, 164 Mass. 492 ; *Ennis* v. *Gray*, 87 Hun, 355, 359, 360 ; *Wagner* v. *Brooklyn Heights R. R. Co.*, 69 App. Div. 349 ; *Wabash, St. L. & P. Ry. Co.* v. *Locke*, 112 Ind. 404.)

In addition to the argument that respondent was not negligent, it is urged that there is no sufficient evidence to show that the intestate was free from contributory negligence.    I have already referred to the facts bearing on that subject, and think the jury would have been allowed by the evidence to reach the conclusion that the intestate in moving about in the course of his work took hold of the wires for the purpose of passing under or over them, and that he was not guilty of negligence as a matter of law for not knowing the nature of the wires (*Giraudi* v. *Electric Imp. Co.*, 107 Cal. 120), or for not noticing the lack of proper insulation, which was not discovered by any of the men at work on the building until the day after the accident.    (*Illingsworth* v. *Boston El. L. Co.*,

161 Mass. 583.) It has often been said that where the injured person is dead wider latitude should be allowed to the jury in passing on this question of contributory negligence, and this case seems to come well within those where it has been decided on meagre evidence that the care of the deceased person was a question for the jury. (*Schafer* v. *Mayor, etc., of N. Y.,* 154 N. Y. 466; *Jones* v. *N. Y. C. & H. R. R. R. Co.,* 28 Hun, 364; affirmed, 92 N. Y. 628; *Noble* v. *N. Y. C. & H. R. R. R. Co.,* 20 App. Div. 40; affirmed, 161 N. Y. 620; *Hart* v. *Hudson River Bridge Co.,* 80 N. Y. 622.)

For these reasons I recommend that the judgment of both courts be reversed and a new trial granted, with costs to abide event.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur; WERNER, J., dissents.

Judgment reversed, etc.