NETTIE GRANT, as Administratrix, etc., of JOHN H. GRANT, Deceased, Appellant, *v.* UTICA GAS AND ELECTRIC COMPANY, Respondent.

Fourth Department, June 29, 1928.

*Miller & Hubbell* [*James F. Hubbell* of counsel], for the appellant.

*Arthur J. Foley,* for the respondent.

CLARK, J.   On the morning of July 11, 1923, plaintiff's intestate, an employee of the Utica Willowvale Bleaching Company, lost his life by coming in contact with one of defendant's high power transmission lines.   This line was wholly unprotected and carried 22,000 volts of electricity.

At the time of the accident decedent was working on the top of a pole of his employer in an endeavor to take the sag out of a service line of the bleaching company, which extended from this pole to one of its nearby barns.   The decedent was, therefore, not a trespasser.   He was engaged in a lawful business for his employer and was working on one of his employer's poles.

Defendant's high power transmission line crosses the premises of the bleaching company, and above its line running to the barn. The nearest pole of defendant was located six feet, ten and seven-eighths inches from the base of the pole on which decedent was working.   Defendant's line consisted of three large unprotected copper wires, two being strung on a cross arm near the top of its pole, and the third wire was strung on the westerly end of a lower cross arm, so it was located between the two poles, defendant's pole being higher than the bleaching company's pole.

When defendant erected its high power line the bleaching company's pole on which decedent was working at the time he was

killed was standing in the same position that it occupied at the time of the accident, and leaned slightly toward the barn and the wires of defendant.

At the time of the accident the current had been turned off the bleaching company's line, and decedent proceeded to climb his master's pole, and had reached the top, so his feet were on or near the cross arm of that pole, when his head and neck came in contact with the lower high tension line of defendant. His hands were on the bleaching company's pole. While he was in this position he received the electric current from defendant's wire, and fell to the ground, but there was no apparent swaying of the pole after he fell, and on examination made soon after the accident the pole did not appear to be broken. Some time subsequently, but on the day of the accident, measurements were taken to ascertain the distances between the bleaching company's pole and defendant's wire both before and after employees of defendant had straightened up the bleaching company's pole into a vertical position.

Before the pole had been straightened up and when it was in the same position it had occupied when defendant's line was first constructed and up to the time of the accident, the distance between the top of the bleaching company's pole and defendant's lower wire at the nearest point was twenty-seven and seven-eighths inches. After the pole had been straightened up by defendant's employees the distance was thirty-five inches and the vertical distance between the bleaching company's wire and defendant's lower high tension wire was twenty-two and one-half inches.

The evidence is undisputed that when defendant constructed its line the bleaching company's pole leaned toward the pole where defendant strung its wires, one of which was but twenty-seven and seven-eighths inches from the top of the bleaching company's pole, as above stated.

In constructing its lines the defendant strung its lower wire on the end of its lower cross arm nearest to the bleaching company's pole. Apparently it could as well have placed its wire on the other end of the cross arm and further away from the pole of decedent's employer, thus lessening the danger to employees of the bleaching company, or it could have located its pole further away from the bleaching company's pole, for it had ample right of way.

The bleaching company's pole and line were there first, and defendant must have foreseen that employees of the bleaching company might have occasion to climb to the top of its pole to adjust or repair its line, but at the close of plaintiff's case the learned

trial court granted defendant's motion for a nonsuit on the ground that defendant had not been shown to be negligent, and it had not been shown ·that the original construction of defendant's line was the proximate cause of the accident.

We think this was a substantial error which cannot be overlooked. The question whether the respondent in the exercise of reasonable care should have apprehended that the pole and premises of the bleaching company might be so used as to bring its employees in contact with defendant's high power lines, subjecting them to great danger, and whether defendant should have guarded against such a contingency, were questions for the jury. (*Braun* v. *Buffalo General Electric Co.*, 200 N. Y. 484; *Larkin* v. *N. Y. Telephone Co.*, 220 id. 27; *Speich* v. *International R. Co.*, 219 App. Div. 620; *Burrows* v. *Livingston-Niagara Power Co.*, 217 id. 206.)

It was not necessary that the jury should find that the defendant should have apprehended that an employee of the bleaching company would do any particular thing to subject him to unusual risks and dangers, or that defendant should have foreseen precisely how an accident might occur, but we are of the opinion that the question whether or not the defendant in the exercise of reasonable care should have anticipated that an accident similar to the one which befell decedent might occur, and guarded against it, should not have been disposed of as a matter of law, but should have been left to the jury as a question of fact.

It was also for the jury to say whether or not the original construction of defendant's line in such close proximity to the existing line of the bleaching company was the proximate cause of this accident.

We are of the opinion that the above questions, and the question of the alleged contributory negligence of decedent should have been submitted to the jury, and that the refusal of the learned court to so submit them was erroneous.

The judgment should be reversed on the law and a new trial granted, with costs to appellant to abide the event.

All concur. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and SAWYER, JJ.

Judgment reversed on the law and new trial granted, with costs to appellant to abide the event.