BENNO G. TROIDLE, Respondent, *v.* ADIRONDACK POWER AND LIGHT CORPORATION, Appellant.

Third Department, March 20, 1929.

*Ainsworth, Sullivan & Archibald* [*Charles B. Sullivan* and *Neile F. Towner* of counsel], for the appellant.

*Edward J. Halter* [*Henry Hirschfeld* of counsel], for the respondent.

DAVIS, J.  In 1915 the plaintiff leased a camp site at Forest Park, on Ballston lake, upon which he thereafter erected buildings. This property he had used as a summer residence until the time of the accident under consideration here.

The defendant, first by oral license and on December 7, 1925, by formal written agreement, was given permission by the owner of Forest Park to maintain its electric light wires through its property along the lake shore. Nothing was said therein as to the voltage of the wires to be carried on poles. These electric wires passed over the lot occupied by plaintiff. It does not appear that he had any knowledge of the defendant's rights on the property other than that implied by occupancy.

On May 1, 1927, the plaintiff had gone to his cottage evidently for the purpose of preparing it for occupancy during the season. For six years he had there installed a radio. He used an outside aerial, supported above all other wires by high poles. New aerials were usually erected each year. It was necessary in getting the aerial in place to throw it over the electric light wires. This was done by attaching a sash cord and an insulator to each end of the aerial and tying a stone to one end. The stone was thrown over the electric wires, carrying along the cord and the attached aerial

which had been looped on the ground. It was then a simple act to raise the ends and attach them to the poles.

On the day in question the plaintiff attempted to place his aerial on the poles. When he was engaged in throwing the aerial over the electric wires in the manner above described, the wire kinked, or threw back, and struck the plaintiff's hands. The aerial was in contact with the light wire. Plaintiff was thrown to the ground and suffered injuries of the most serious character, by reason of the burns and shock caused by an electric current passing through his body.

It appears, without serious dispute, that the same electric wires had been there several years; that they were high tension wires, carrying a current of 2,300 volts; that originally they were covered by a triple cotton braid impregnated with a bituminous compound; and that exposure to the weather had caused this covering to be frayed and worn and the bituminous compound had gradually disappeared to some extent. It is admitted that at the time of the accident this covering had little, if any, insulating quality and the wires were in effect uninsulated. These wires were about twenty-two feet above the ground at that point. They ran across the lot between the cottage and the garage — forty-five feet from the cottage and not more than ten feet from the garage.

A majority of the court readily agree that upon this state of facts, as elaborated upon the trial, questions of fact as to negligence and contributory negligence were presented. We cannot agree with the argument of the learned counsel for defendant that the plaintiff was a trespasser upon its property at the time he was injured. In the use of real property by two persons in the relation of plaintiff and defendant, it is expected that the rule of mutual accommodation and forbearance will prevail. The license or easement did not give to defendant the exclusive use of the property crossed by its line. The plaintiff, as a holder of the dominant tenement, had the right to use the premises, so long as he did not unreasonably interfere with the rights of the defendant. (*Johnson* v. *S. I. G. & C. M. Assn.*, 122 N. Y. 330, 336; 11 Halsbury's Laws of England, 295; 19 C. J. 984, and cases cited.) Under such circumstances there are many uses which may be contemplated on the part of the persons residing on the property. Telephone wires may be strung from a pole to the house; a flag pole may be erected and a flag raised; a child in the yard may fly a kite; and for a brief period there will be contact with the defendant's wires, ordinarily causing no obstruction and making no substantial interference with the defendant's rights. Likewise the defendant in making inspection and repairs may, through its workmen, occupy for a moment or two lands beyond the strict boundaries within which it has been given rights.

These are at most but a technical trespass, imposing no penalties and taking away no rights. (11 Halsbury's Laws of England, 330; *Mullaney* v. *Spence*, 15 Abb. Pr. [N. S.] 319, and cases cited; *Lynchburg Telephone Co.* v. *Booker*, 103 Va. 594; 45 C. J. 753, and cases cited.)

There are authorities cited by defendant like *Hickok* v. *Auburn Light, H. & P. Co.* (200 N. Y. 464), where the act of a person in climbing a pole or other structure maintained by an electrical company for carrying high tension wires, has been regarded as a trespass, and a person injured under such circumstances has been denied relief; but we know of no case where the mere touching of a wire under circumstances like those here detailed, has been held to be a trespass. If such were the doctrine, it would be difficult to conceive a state of facts where recovery might be had. There is liability to one rightfully on the premises who comes in contact with a wire. (See *Keith* v. *Payne*, 164 App. Div. 642; *Ferrari* v. *New York Central R. R. Co.*, 224 id. 182; Notes, 65 University of Penn. Law Rev. 506; *Commonwealth Elec. Co.* v. *Melville*, 210 Ill. 70; *Mullen* v. *Wilkes-Barre G. & E. Co.*, 229 Penn. St. 54.)

The rule is well settled that a corporation maintaining an agency so dangerous to human life and safety owes to the public a high degree of care. It must exercise reasonable prudence to anticipate that persons on errands of business or pleasure may come within a zone of danger well known to it but less perfectly known, if known at all, to them. (*Braun* v. *Buffalo General Electric Co.*, 200 N. Y. 484, 492; *Casualty Co.* v. *Swett El. L. & P. Co.*, 230 id. 199; *Horning* v. *Hudson River Telephone Co.*, 111 App. Div. 122; affd., 186 N. Y. 552; *Burrows* v. *Livingston-Niagara Power Co.*, 217 App. Div. 206; affd., 244 N. Y. 548; *Nelson* v. *Branford L. & W. Co.*, 75 Conn. 548.)

The use of the aerial wire by plaintiff for six years, a similar use of such wires by other cottagers in the vicinity and the common knowledge of the widely increasing use of radio in recent years, furnish reasons why defendant might reasonably foresee an accident of this nature, if it permitted uninsulated wires to remain in close proximity to a house under these circumstances. (*Kessler* v. *West Missouri Power Co.*, 283 S. W. [Mo. App.] 705.) It was established on the part of the plaintiff that insulation of such wires is practicable. It is disputed only by argument. The convenience to be gained by having electric lights for the cottagers is not of greater importance than their protection from such a grave and unseen danger.

The plaintiff made proof of other acts of alleged negligence. There was testimony on the part of an expert that he examined the premises and discovered that about 1,000 feet distant from the place of the accident the electric wires ran through trees; that one of the poles leaned so that it brought two of the wires in contact with

different trees; that the current had escaped, burning off limbs and had burned the top of one tree through so completely that it had fallen. He testified that from his examination the wires were of a type or system so that if one came in contact with a tree, it doubled the intensity of the voltage of the other wire; and that the wire which furnished contact with the plaintiff was one which would naturally be carrying the double voltage. The evidence indicated that these contacts with the trees had existed prior to and subsequent to the accident. The defendant offered proof that these wires were of the type known as the four-wire neutral grounded system, and that it was not possible for the intensity of the current to be doubled thereon.

The evidence offered by the plaintiff was competent as bearing on the general history of the line, the result of the type of covering used as regards insulation and leakage of current, and the lack of inspection to discover dangerous conditions. (*Barnett* v. *Atlantic City Electric Co.*, 87 N. J. Law, 29, 33.) The learned trial court referred to this evidence in his charge in a general way as constituting facts upon which negligence might be predicated. No exception was taken. Defendant's counsel merely requested the court to charge: " The fact that one or more of defendant's wires at points other than those between poles 19 and 20 [where the accident occurred] may have come in contact with trees, is no evidence of negligence on defendant's part by reason of which the plaintiff sustained the injuries in question." The request was declined. This scarcely raised any vital question of error. While it is difficult to see how the contact of wires with trees at a point somewhat remote from the scene could have contributed directly to the result, it was a fact which might be taken into consideration as bearing on the failure to inspect, the lack of insulation with resulting leakage, and the sudden and unexpected events that followed.

The primary current without its intensity being doubled was admittedly sufficient to have caused the injuries. We do not believe that the jury was misled so that their verdict was based on facts other than those connected with the main controversy over the negligence of the defendant in maintaining an uninsulated wire on the premises where the injury occurred and the contributory negligence of plaintiff. We find no harmful error requiring reversal.

The judgment should be affirmed, with costs.

HILL and HASBROUCK, JJ., concur; VAN KIRK, P. J., dissents, with a memorandum in which HINMAN, J., concurs.

VAN KIRK, P. J. (dissenting). Before plaintiff leased the premises where the accident occurred and ever since, defendant's electric

line extended across those premises in the same location and form of construction as at the time of the accident. Plaintiff used the electric current from this line for lights in his house and garage. The electric wires were inclosed in standard weatherproof three-ply covering generally used for " outside " lines. It is not claimed that this covering has any considerable insulating quality. There is no dispute that 2,300 volts were sufficient to have caused the injuries to plaintiff and there is no substantial dispute in the evidence that this line was at the time what is called a four-wire grounded neutral system; being such, contact of a primary wire with trees would not increase the voltage in those wires. These primary wires hung at a minimum of twenty feet above the ground and were nowhere on the premises within fifteen feet of any building or structure on the premises. Plaintiff had maintained a radio aerial wire across and about twenty feet above defendant's wires during five or six years next preceding the accident. Neighbors along defendant's line maintained aerials on their lots in like positions. While replacing his aerial plaintiff coiled the wire on the ground beside him, attached a stone to its end and threw it over defendant's wires. When the naked aerial wire rested on the defendant's wire the plaintiff received the electric current through it and sustained his injuries. Plaintiff urged that defendant should have discovered these aerials, realized that a dangerous condition was created thereby and used specially insulated wires under them. Upon the record the sole question in respect to defendant's negligence is this: Was the defendant negligent in failing to insulate its primary wires under plaintiff's aerial, sufficiently to insure plaintiff against injuries when he threw a naked copper wire across them? A majority of the court is of opinion that questions of fact were presented in respect to both negligence and contributory negligence.

There were errors in the charge of the court and in its rulings which require a reversal. It charged that the first question was whether the defendant was " negligent in the operation and maintenance of its line," and in discussing this, said: " You heard him [plaintiff's expert] describe the worn condition of the insulation on the lighting wire, or, as it has been described here more accurately perhaps, the covering on the wire — because there is a question and an important question in this case it seems to me, whether or not that covering * * * insulated the wire with a 2,300 volt load, or whether it did not, or whether it would not. At any rate you have heard Mr. Sheldon, and he claims that the wire was worn, that the covering, or the composition that made up this covering was worn so that it was worn off and enabled the current

to escape with that voltage, and when it came in contact with the aerial it escaped and went through the aerial in sufficient volume and quantity to cause these injuries."

There was no question about either the insulating quality or the sufficiency of the weatherproofing. The experts for both parties testified that this weatherproofing, even though new, was not sufficient to prevent a current of 2,300 volts from passing into a naked wire if that wire while grounded was placed in contact with the electric wire. This charge was called to the attention of the court and it refused to correct it. Again the court charged that the plaintiff claims that the escape of the electricity through the aerial " was due to the condition of the wire and to the condition of the line and he has described how he claims the tree came in contact with the wires of this line at some distance below pole 32, or some distance beyond anyway, where these limbs of the trees had been burned off and injured." And the court continues later: " Now the plaintiff asks you to find from all of these circumstances, the bending of the wire, and the leaning of the pole, and the condition of the line, and the insulation that was used, or the covering, the plaintiff asks you to find under all of these conditions that existed there, that the defendant was negligent, and that its negligence caused this injury to the doctor. That is the question, gentlemen, that I stated to you at the outset that I was going to submit to you to determine." The evidence shows conclusively that the condition of the line at other places, the leaning of the poles, any contact of the wires with trees, had nothing whatever to do with this accident; the charge was confusing and misleading; it left to the jury a question which should have no influence on its determination; it did not fairly express to the jury the question on which defendant's negligence rested. Further, much evidence, describing the leaning poles and the burning of trees by contact with wires, was admitted over the defendant's objection and exception. After this evidence was in, the defendant moved to strike it out and the court refused. This ruling was erroneous.

I think these errors in the charge and in the rulings of the court were prejudicial, especially in a case close upon the facts.

The judgment should be reversed and a new trial granted.

HINMAN, J., concurs.

Judgment affirmed, with costs.