HEIRS OF ALFREDO MATHEU, ETC., Plaintiffs and Appellees, *v.* MUNICIPALITY OF ARECIBO, Defendant and Appellant.

No. 7965. Argued February 9, 1940.—Decided April 23, 1940.

Luis Mercader for appellant. *Diego E. Ramos* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an action brought by a widow and her children to recover damages resulting from the death of their husband and father respectively, which occurred by reason of negligence on the part of the defendant, as alleged by the plaintiffs and so held by the district court.

Briefly, it was alleged in the complaint that the Municipality of Arecibo, defendant herein, maintains and operates an electric plant that furnishes current to private residences in the Hato Abajo barrio over a general wire along the Arecibo-Lares road, which wire is charged with a current above 110 volts, a potential sufficient to kill a person instantaneously;

That on and prior to January 1, 1938, Isabel Feliciano was the wife of Alfredo Matheu, who was the father of her three children, Luis Emilio, Wilfredo and Jesús Israel, of six, four and two years of age respectively;

That Matheu was a workman, about thirty years of age, strongly built, healthy, sober, who supported his family with his wages which averaged $1.50 per day;

That on January 1, 1938, Matheu was on his way home on foot along the edge of said road and, on noticing a wire

hanging from a tree which obstructed his way, tried to remove it without knowing that the same was charged with electricity and his body received such a strong shock that he fell to the ground and died instantaneously;

That his death was exclusively due to the negligence of the defendant in keeping the wire bare and permitting the same to hang from a tree during many hours, without warning the passers-by of the danger; and

That the widow and her children have suffered damages which they assess at $10,000.

The defendant answered and denied generally and specifically all the facts alleged in the complaint and pleaded as special defense that the accident was due to the conduct of Alfredo Matheu himself which constituted gross negligence.

The case went to trial and the court found, as already stated, against the defendant which was adjudged to pay to the plaintiffs $2,700 as damages and an additional sum of $300 as attorney's fees, and ordered that the amount of the judgment be deposited in the court so as to determine then the sum to be submitted to the legal restrictions regarding the property of minors.

The following is transcribed from the opinion of the trial court:

"There is no conflict in the evidence as to whether the municipality operates an electric plant for supplying electric current, and that the wire with which the deceased came in contact was part of its primary lines, hanging from a tree and highly charged.

"The evidence is conflicting as to whether the wire was resting on the tree and fell on the road in such way as to obstruct the traffic, or whether it rested on the tree and was hanging very low over the ditch of said road. One of the witnesses for the defendant testified that when he got to the place and cut the wire the latter was partly on the road and that Matheu's body lay partly on the roadbed and partly towards the ditch.

". . . . At the trial of the case the defendant insisted on the fact that the wire was not obstructing the path of the victim, and that the touching of it was an unnecessary and capricious act, con-

stitutive of negligence which, as claimed by the municipality, relieves it from liability.

"The falling of a primary wire under the circumstances shown in the present case, in the absence of *vis major*, constitutes negligence on the part of the entity operating the plant, for such negligence endangers the life not only of pedestrians on the highways but of those roadmen who work in road ditches. The doctrine of *res ipsa loquitur* is applicable in the premises.

"Even if we gave credence to the testimony of some of the witnesses for the defendant as to the wire not obstructing the way over the highway, that it only hanged very low over the ditch and not on the roadbed, we would always reach the same conclusion.

"In walking over the roadbed a person might, urged by an instinctive impulse, stretch his arm to touch a wire or any other object which, resting on a tree, hangs over the ditch, which is part of the public land. It is not the case of somebody who crosses from the road into private property for the purpose of touching things which are in some way reserved exclusively for the use of their owner or which, although public, are enclosed.

"In the absence of prior warning or knowledge, it is not presumed that a passer-by, under the circumstances, could foresee the risk or danger involved in the unnecessary act of touching the wire. From the natural instinct of self-preservation the contrary shall be presumed. Even though his conduct might contribute to the unfortunate result, the proximate cause must be attributed to the negligence which the law presumes on the part of him who holds some dangerous object within reach of the passer-by.

"Alfredo Matheu left a young widow and three minor orphans who, to judge from their ages, had great expectations of aid from their father who was spoken of at the trial as a good worker in good health."

Feeling aggrieved, the defendant municipality appealed to this court. It assigns in its brief four errors which, it alleges, were committed by the district court: in applying to the case the doctrine of *res ipsa loquitur;* in failing to hold that the proximate cause of th: accident was the gross contributory negligence of the ancestor of the plaintiffs; in weighing the evidence and reaching conclusions contrary to law, and in assessing the damages and costs.

 The appellant bases its contention that the doctrine of *res ipsa loquitur* is not applicable in the premises on the claim that it was its witnesses who told the truth, and places the wire outside the road even beyond the ditch, and the ancestor of the plaintiffs, who was a mechanic with knowledge of electricity, as being drunk, traveling accompanied by a friend and unnecessarily grabbing the wire with knowledge of the risk incurred, and then concludes that the negligence of the said ancestor was so gross that it made it impossible to apply the above maxim. It cites 45 C. J. 1209, sec. 777. It maintains that it did not know of the fall of the wire and that it was not bound by any contractual obligation to Matheu. It relies on sec. 775 of 45 C. J. 1207.

The first of the two quotations reads as follows:

"Subject to the rule as to the character of an occurrence which will warrant the application of the doctrine, the mere fact that an injury has occurred on the premises of defendant creates no presumption of negligence on his part. Furthermore it has been held that in order for the doctrine to apply it must appear that the injured person was in a place where he had no right to be, and that the doctrine cannot be invoked so as to raise a presumption of negligence where defendant is only under the duty to avoid affirmative or active negligence, such as that owing to a trespasser or to one in his premises by virtue of mere passive acquiescence or a naked license or an implied invitation." 45 C. J. 1209, sec. 777.

The second quotation reads as follows:

"As the existence of actionable negligence, and the liability predicated thereon, depend upon the breach of a legal duty to use care, there, of course, can be no application of the doctrine of *res ipsa loquitur* unless defendant in the particular case was under such a duty to plaintiff. Furthermore, however, and in conformity with the rules as to the character of an occurrence which will warrant the application of the doctrine, the circumstances which create the obligation to use care must be such as to impose this duty on defendant alone, for the rule cannot apply so as to raise a presumption against a defendant where the parties involved were both in the exercise of an equal right on the occasion in question and were

under the same measure of care to avoid inflicting or receiving injury." 45 C. J. 1207, sec. 775.

Although the district judge did not resolve the conflict in the evidence expressly and finally in favor of the plaintiffs, the tenor of his opinion shows with sufficient clearness that he sided with the plaintiffs and that his reference to the testimony of the witnesses for the defendant was only in a hypothetical way so as to weigh the fact most favorably to the defendant and even then conclude that it was liable.

With this explanation, a mere reading of the jurisprudence cited is sufficient for concluding that the same is not applicable to the instant case.

We have considered the testimony of the witnesses for both sides and it is our opinion that the following summary of the evidence of the plaintiffs and part of that of the defendant contained in the brief of the appellees is correct. It is as follows:

"It appears from the evidence that about 5 p. m. on the day of the accident, the dead man Matheu was going home along the road from Arecibo to Lares (T. of R., pp. 14, 37); that on this side of the hospital, close to this city of Arecibo (T. of R., 26, 37) he came across a fallen wire hanging from a tree and touching the ground (T. of R., 14, 18, 19); and that in touching the wire so as to pick it up and throw the same to one side in order to pass, the dead man received from the wire such an electric current that he was there instantly killed (T. of R. 15, 23); that it was a primary wire of the hydroelectric system maintained and operated by the defendant municipality and was partly insulated and partly bare (T. of R. 21, 26, 31); that the day of the occurrence was a clear and normal day (T. of R. 25); that at that place there was no sign or signal to ward off the danger caused by the wire (T. of R. 19); that the wire was lying on the road and not in the ditch (T. of R. 19); that the dead man was going over the roadbed, grabbed the wire and fell to the ground electrocuted (T. of R. 20)."

The part not analyzed includes the testimony of Quintín Alvarez, who stated to be line inspector of the defendant,

and of Julio Martínez, municipal director of public works, who were not present at the accident.

The former testified that while in the municipal building a motocycle policeman came up in search of an electrical inspector and took him to the road where a man had been electrocuted. He climbed on the bycicle with the policeman, "got to the switch and cut off the current." "The wires were hanging from the trees over the edge of the ditch." (T. of R. p. 41.) On getting there he failed to find the wire on the road. He thinks that it could not have fallen on it. (T. of R. 42.) If he had come across a similar wire, he might have disconnected the same, provided it was insulated, but not with bare hands. (T. of R. p. 43.)

The latter testified that as soon as they heard the news they proceeded to fix the wire. That he had not been notified before. That he has a man under him whose job is to inspect the line (T. of R. 45.) That the man does his work every time his services are needed. That the wires of the line are laid on the righthand side of the road and parallel to it, towards the farms on the righthand side, not on the ditch. (T. of R. 46.) To the question: "Is there nobody whose job it is to inspect?," he answered: "I have nobody in my department. The inspection is made only by repairmen." (T. of R. 47.)

Judging from the above evidence, the first three errors assigned against the trial court are without merit.

In *Orta* v. *Porto Rico Ry. L. & P. Co.,* 36 P.R.R. 668, 671, this court through Mr. Justice Wolf expressed itself as follows:

"The court also held that it was negligence on the part of a company to maintain wires of high tension in populous places without due protection and vigilance and that this failure to provide was the proximate cause of the damages suffered by the plaintiff. The appellant maintains that the actual negligence of the defendant Company was not shown and that the court was implicitly relying on the doctrine of *res ipsa loquitur*. However, with the exception of

cases from Pennsylvania which the appellant cites, the prevailing rule in the United States is that where a wire of high tension falls in a public street, causing injury, the doctrine of *res ipsa loquitur* is applicable.

"Under the title of electricity in 20 C. J., p. 380, par. 63, we find the following:

" '(2) *Res Ipsa Loquitur.* The doctrine of res ipsa loquitur finds frequent application in electric cases where the circumstances of the accident are often such as to create a presumption or inference of negligence sufficient to carry the burden resting primarily upon plaintiff and often said to cast on defendant the burden of meeting or overcoming it by evidence, but accurately speaking, it does not operate to shift the burden of proof. The fact that the defendant conducts electricity to a certain place; that electricity so employed may escape in such a way as to produce an injury; and that an injury from electricity is actually occasioned in a place where the injured party has a right to be are usually held to constitute a prima facie case of negligence. The fact that wires carrying a dangerous current of electricity have broken or become detached from their poles in the street or highway and caused injury is generally held to raise a presumption of negligence, although there is authority to the effect that the doctrine does not apply in such cases.'

"The text is supported by *Rosado* v. *Ponce Railway, Light & Power Co.,* 18 P.R.R. 593; etc. (cases follow).

"While in the case of *Rosado* v. *Ponce Railway, Light & Power Co., supra,* we did not discuss the jurisprudence in an ample manner, it is an authority in Porto Rico for the application of the doctrine. The facts of that case were altogether similar to the facts in this case.

"The appellant also maintains that the defendant company did everything necessary to protect the public from the fall of dangerous wires. The evidence, as we have indicated, shows that these wires were not duly insulated. The appellant apparently relies on some of the statements of experts that these wires generally are protected in no different manner from that in which the appellant here sought to protect the public, or insulate its wires. The whole tendency of the authorities is to the contrary.

"*Herbert* v. *Lake Charles Ice and Water Works Co., supra: Colusa Parrot Mining & Smelting Co.* v. *Monohan, supra;* 9 Ruling Case Law, 1210, 1211, where it is said: 'From the very nature of

this business an electric company using highly charged wires owes a legal duty, irrespective of any contractual relation, toward every person who in the exercise of a lawful occupation in a place where he has a legal right to be is liable to come in contact with the wires, to see that such wires are properly placed with reference to the safety of such persons and are properly insulated; *Lewis's Executors, Appellants,* v. *Bowling Green Gas Light Co.,* 22 L.R.A. (N. S.) 1169, and elaborate note; *Braun* v. *Buffalo General Electric Co.,* 200 N. Y. 484, 94 N. E. 206, 34 L.R.A. (N. S.) 1089, and note, and also some of the other cases previously cited in this opinion.

"We do not find that the appellant sufficiently met the duty of explaining how these wires fell, or of relieving itself from the legal presumption established by the doctrine aforesaid."

Although the facts in the case at bar are not as strong as those in the *Orta* case, *supra,* yet we think that the same rule applies.

The defendant had laid overhead high tension wires capable of killing a human being at a place where, if they snapped, they might fall in another place where they could inevitably cause injury. A highway is for public traffic whether along its center, or on its sides, or even over its ditches. In the instant case the wire snapped and fell on it or so near it that it was exclusively the cause of the accident.

The snapping of the wire was not due to *vis major* and was not explained away consistently with diligence on the part of the defendant. It was not shown that the latter periodically inspected its lines in order to ascertain their state of repairs. All it did was to lay the wires over a dangerous place and apparently nothing more was done. Its employees used to make repairs. Too much was expected. Therefore, the snapping of the wire is only explained by the negligence of the defendant.

██ It is true that the ancestor of the plaintiffs could have passed without touching the wire and that if he had not touched it he would not have died; but his contributory act can not be considered as the proximate cause of the accident. If the wire had not fallen where he was rightly pass-

ing, nothing would have happened. If he was drunk, his conduct can still be more easily explained, for it can not be maintained that a man forfeits his right to use a highway all over its surface by the fact of being drunk.

This is perhaps an extreme case, but to our mind the uppermost true cause of the injury is still the failure on the part of the defendant in performing the clear duty assumed by it in laying its dangerous lines so near a highway and in failing to keep the same in a perfect state of repair.

We do not think either that the last error assigned was committed. The ancestor of the plaintiffs was still young and was earning a living by working and the plaintiffs depended on him for support. The sum of $2,700 as compensation is not under the circumstances an excessive amount. The amount allowed for attorney's fees is also justified. Three hundred dollars is a reasonable compensation for the services of counsel in view of the time consumed and of the mental effort required for conducting the case.

The judgment appealed from must be affirmed.